No. 47,837

STATE OF KANSAS, *Appellee*, v. DONNA JOAN CHAMP, *Appellant*.

(543 P. 2d 893)

Opinion filed December 13, 1975.

*George W. Earnshaw*, of Shawnee Mission, argued the cause and was on the brief for the appellant.

*Dale E. Hartung*, assistant district attorney, argued the cause, and *Curt T. Schneider*, attorney general, and *Margaret W. Jordan*, were with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: The appellant, Donna Joan Champ, was convicted by a jury of the offense of felony theft in violation of K. S. A. 21-3701 (Weeks 1974). She appeals, and asserts the following as trial errors:

1. Allowing the prosecutor to question a witness from a transcript from another proceeding where defendant was neither present nor represented.

2. Receiving into evidence $432 in currency when no proper foundation was laid as to the chain of evidence.

3. Receiving into evidence prejudicial testimony of Detective Hatfield regarding the defendant's daughter and her relationship with Ed Granville.

4. Receiving evidence of defendant's confession which was made under threats and coercion by the police.

5. Failing to submit the defendant's requested jury instructions Nos. 5, 6, 12 and 13.

The evidence discloses that defendant was employed at the Taco Grande restaurant in Olathe, Kansas. The local police, acting on a tip that a theft would occur at the restaurant, placed it under surveillance during the late evening of March 17, 1973. Defendant was in charge of closing the restaurant that evening. The police observed the defendant, together with several other persons, leave the building and drive away. The car returned later, and someone inside the car threw an object through the service window on the east side of the restaurant. The police discontinued the surveillance at 4:30 in the morning, and thereafter a search of the restaurant disclosed that there was no money in the safe.

The officers proceeded to defendant's residence, woke her, and questioned her. She admitted closing the restaurant, stated that she placed the cash receipts in a money bag, which in turn was placed in the safe. She denied any knowledge of the theft. She permitted the officers to search her residence, which was then occupied by defendant, her daughter, and her daughter's boy friend, Ed Granville. Nothing was found during the search.

The officers then proceeded to Paola, Kansas, where they questioned James C. Brown, the driver of the vehicle in which defendant left the restaurant. Brown ultimately admitted involvement in the theft. He turned over to one of the officers currency in the amount of $432, gave the officers a written statement, and testified for the prosecution. Briefly stated, Brown testified that he and defendant planned the theft; that defendant took the money with her when she left the restaurant, and later turned it over to him; and that he returned to the restaurant and threw a rock through an unlocked window to give the appearance of burglary.

Defendant first complains that it was error for the trial court to permit the state to question Brown from a "transcript" from another proceeding. This "transcript" was, in fact, the statement Brown had previously given to the officers. Defendant argues that the statements of a co-conspirator are not admissible against another co-conspirator unless the existence of a conspiracy is first established by other evidence; and that in any event, statements of a co-conspirator are not admissible where they are made after the conspiracy has ended and the crime has been committed. In support of this reasoning defendant cites State v. Goyens, 110 Kan. 421, 204 Pac. 704. Goyens is readily distinguishable from the case at hand. The witness in Goyens was a law-enforcement officer; the

statements about which he testified were made to the officer by the alleged co-conspirator who was not a witness.

The statement which the state used in examining Brown was a statement previously made by him. Brown surprised the state by testifying contrary to his earlier statement. The state then examined him as to his prior statement. This court, in *State v. Potts*, 205 Kan. 47, 51, 468 P. 2d 78, said:

"It is the rule in this state that where it appears a party is genuinely surprised by adverse testimony from his own witness, the trial court may, in its discretion, allow the party calling the witness to cross-examine and to interrogate him as to prior contradictory statements. A party may impeach his own witness to such an extent. K. S. A. 60-422 grants impeachment privileges to a party calling the witness. In case of surprise the state has long been granted the privilege of impeaching its own witness. . . ."

Defendant next complains that it was error for the court to receive into evidence the $432 in currency. Defendant claims that the chain of custody was not properly shown, after the money was initially stored in the police property room. Detective Richard Ray received the money from Brown. Ray counted it, initialed each bill, placed the money in a sealed envelope and stored it in the property room at the police station. Ray testified that he had removed the envelope three times from the property room; on each occasion he opened the envelope and found the same bills therein; and each time he returned the money to a sealed envelope and placed it in the property room. Ray identified each bill as one of those received from Brown. We believe that such evidence and testimony is sufficient to establish a continuous chain of custody of the currency.

Both parties cite *State v. Horne*, 215 Kan. 448, 524 P. 2d 697, in which this court quoted its own language in *State v. Tillman*, 208 Kan. 954, 494 P. 2d 1178, that:

" '. . . It is not necessary, however, that the object offered into evidence should have been kept continuously under lock-and-key or continuously sealed up. The preliminary proof of the identity of the object and that the same has not been improperly tampered with, is first to be determined by the trial court. It is not necessary that all possibility of its being tampered with should be excluded. . . . The ultimate question of the sufficiency of the proof is, of course, for the jury to determine. . . .' "

There was no error in receiving this currency in evidence.

Defendant next contends that it was error to receive into evidence the testimony of Detective Hatfield regarding the defendant's daughter and her relationship with Ed Granville. Detective Hat-

field, in response to a question by defense counsel as to why the officer had advised the defendant that he might ask the authorities to check on her children, stated that he believed his duty as a juvenile officer required him to advise the authorities that defendant's daughter, age 16, was living with a 29-year-old man. While this response would seem to be irrelevant to the charge of felony theft, the question of defense counsel elicited the response. The trial court's refusal to strike the witness' answer can hardly be a ground for reversal where it was responsive to defense counsel's question. The testimony was not offered by the state, and presumably would not have been placed in evidence but for appellant's inquiry. "One who by his own act invites error, cannot complain of it or take advantage of the court's ruling." *State v. Cantrell*, 201 Kan. 182, 187, 440 P. 2d 580, cert. den., 393 U. S. 944, 21 L. Ed. 2d 282, 89 S. Ct. 315.

Defendant next contends that it was error to receive evidence of her confession, made under threats and coercion by the police. Her point is not well taken.

During a conversation with Detective Hatfield on the Monday following the theft, defendant admitted her complicity therein. The state, however, did not introduce any evidence or testimony concerning the confession in its case in chief. Defendant testified in her own behalf. She was the first witness to mention the confession. At the same time she stated that the confession should not be believed by the jury because it was made under threats by the police. The state later offered the testimony by Detective Hatfield in rebuttal. Defendant now argues that the trial court should not have received evidence of the confession since it was demonstratively involuntary.

The authorities relied upon by the defendant are not in point. They deal with circumstances in which a confession was introduced by the state and admitted into evidence by the trial court. Here, the state made no effort to introduce the confession into evidence. Defendant herself placed it before the jury. Then, and only in rebuttal, did the state refer to the confession, and then only in order to refute the charges of coercion.

Any error in permitting the defendant to testify about her confession was created by her. Whether the actions of the police were proper or not, defendant waived her right to complain of testimony concerning her confession when she introduced evidence of it during her testimony. *State v. Cantrell*, supra.

Defendant's final point is that the trial court erred in refusing to submit certain requested instructions to the jury. Unfortunately, defendant's present counsel states that he has been unable to locate the instructions requested by trial counsel. The trial court record does not contain the proffered instructions, and former counsel is unable to locate them in his file. Defendant somehow concludes that this omission requires reversal.

The instructions given by the trial court are fully set forth in the record. These appear adequate. Defendant's counsel, upon oral argument, was unable to suggest any additional instructions which should have been given. We know of none. Having not seen the proffered instructions, we cannot say that it was error to refuse them.

We find no merit in the points raised by defendant, and no reversible error in the record. The conviction is affirmed.