No. 48,519

STATE OF KANSAS, *Appellee,* v. CHARLES D. ROBERTS, ROBERT CRIT-
TENDEN, JAMES E. SMITH and ROBERT L. TAYLOR, *Appellants.*

(574 P.2d 164)

Opinion filed November 5, 1977.

*James W. Wilson,* of Hodge, Wood & Wilson, of Wichita, argued the cause, and *Ray Hodge,* of the same firm, was with him on the brief for appellant Charles D. Roberts.

*Lewin E. Timmerman,* of Timmerman & Kratzer, of Wichita, argued the cause and was on the brief for appellant Robert Crittenden.

*Willard B. Thompson,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause and was on the brief for appellant Robert L. Taylor.

*Roger K. Wilson,* of Arn, Mullins, Unruh, Kuhn & Wilson, of Wichita, argued the cause and was on the brief for appellant James E. Smith.

*Stephen M. Joseph,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Vern Miller,* district attorney, and *Stephen E. Robison* and *Richard Ballinger,* both assistant district attorneys, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Charles D. Roberts, Robert Crittenden, James E. Smith and Robert L. Taylor were jointly charged in a five count information with various crimes arising from two separate incidents which occurred on February 12 and 13 respectively. At trial each defendant was represented by separate counsel. The joint trial resulted in one or more convictions against each defendant. On appeal one record of the trial was filed but each appellant filed a separate brief raising various points on appeal. The 33 points raised do not affect the convictions of all appellants and in the interest of brevity we will discuss only those points necessary to dispose of the appeals and which will necessarily arise on retrials.

The first incident which gave rise to four of the five counts will be referred to as the Fletcher incident. It occurred on February 12 and involved all four appellants. Myrl (Tex) Fletcher, the victim, was living in an apartment building in Wichita. Gary Adams and Cindy Fanning were living together in a separate apartment in the same building. Gary and Cindy were previously acquainted with defendant Roberts and they were present in the Fletcher

apartment when Roberts quarreled with Myrl (Tex) Fletcher on the evening of February 11. Gary and Cindy were awaked at 3:30 a.m. on February 12 by all four defendants. The four defendants sat in Gary Adams' apartment and talked for some time. Roberts began "talking about going over to Tex's house." Cindy had previously agreed to clean the Fletcher apartment and had a key to the apartment. She gave the key to Roberts. Roberts knew where Fletcher kept a pistol in his apartment. He took the key and left. When he returned he had the pistol and a bottle of wine. Cindy testified that "they" were talking about robbing Tex. She did not want to remain in Gary's apartment so arrangements were made for appellant Smith to take her and Gary to a friend's home some distance away.

Fletcher testified that he was awakened between three and five a.m. on February 12 by a noise in his living room. He saw two people in the shadows, one taller than the other and both in men's clothing. The two ran into the kitchen and poked "something" around the corner. They told him to get down on his hands and knees. He thought the "something" was a shotgun. He was told "Don't worry, we have already got your gun." At that time he saw the television, tape deck and turntable were gone from his credenza. The intruders took about $38.00 from his trouser pocket, cautioned him to remain on the floor and then left. He heard the front door open and close. The door glass was shattered. A car started outdoors and left the area. He noticed it was 4:15 a.m. when he called the police. Fletcher identified the articles taken from his apartment which included the pistol.

The second incident which gave rise to the fifth count in the information will be referred to as the Wishing Well incident. On February 13, 1975, shortly after 12:00 a.m. two men entered a bar in Wichita called the Wishing Well. One man was wearing a mask and carrying a shotgun. The other was carrying a pistol similar to the one taken from the Fletcher apartment. The man with the pistol had the manager, Braxton Bailey, empty the contents of the cash register into a canvas bag. Approximately $135.00 was obtained from the register. The robbers took Bailey's wallet containing identification and credit cards. Although the witnesses in the Wishing Well could not make positive identification of the robbers, appellants Crittenden and Taylor were later stopped and frisked. Crittenden had the contents of Bailey's wallet on his person.

As a result of these two incidents one information was filed. Roberts, Crittenden, Smith and Taylor were charged with aggravated robbery and with conspiracy to commit aggravated robbery in connection with the Fletcher incident. Roberts alone was charged with aggravated burglary and misdemeanor theft of the pistol in connection with the Fletcher incident. In addition Crittenden and Taylor were charged in count five with aggravated robbery in connection with the Wishing Well incident.

We will first consider the appeal of appellant Smith. He was charged and found not guilty of the aggravated robbery of Fletcher. He was charged and found guilty of conspiracy to commit aggravated robbery in connection with the Fletcher incident.

Our conspiracy statute provides:

"A conspiracy is an agreement with another person to commit a crime or to assist to commit a crime. No person may be convicted of a conspiracy unless an overt act in furtherance of such conspiracy is alleged and proved to have been committed by him or by a co-conspirator." (K.S.A. 21-3302 [1].)

In *State v. Daugherty*, 221 Kan. 612, 562 P.2d 42, this court holds:

"Conspiracy as defined by K.S.A. 21-3302 consists of two essential elements: (1) An agreement between two or more persons to commit or assist in committing a crime and (2) the commission by one or more of the conspirators of an overt act in furtherance of the object of the conspiracy." (Syl. 4.)

To prove a conspiracy it must be established that the conspirators had a mutual understanding or tacit agreement, a meeting of the minds, for the accomplishment of the common purpose. This meeting of the minds may be expressed or implied from the acts of the parties. (15A C.J.S., Conspiracy, § 40, pp. 734-735.) However a conspiracy to commit a crime is not established by mere association or knowledge of acts of the other parties. There must be some intentional participation in the conspiracy with a view to the furtherance of the common design and purpose. (15A C.J.S., Conspiracy, § 39, pp. 733-734.)

After carefully reviewing the evidence in the present record this court cannot find any mutual understanding or tacit agreement by Smith for the accomplishment of the aggravated robbery of Fletcher. It is true he accompanied Roberts, Crittenden and Taylor when they arrived in the apartment of Gary Adams. Smith

was present and knew of the plans which were thereafter made. However, when Cindy Fanning, the state's principal witness to the conspiracy, was asked if Mr. Smith said anything during the planning stages her answer was "No." Thereafter, Roberts obtained the key from her and got the pistol from Fletcher's apartment. There was no evidence introduced to establish that Smith entered into any agreement to rob or to participate in the robbery of Fletcher. Before the actual robbery occurred Smith left the area and drove Gary Adams and Cindy Fanning to a friend's house. There was no evidence of participation by Smith.

The test for granting a judgment of acquittal has been stated many times. See *State v. Gustin,* 212 Kan. 475, Syl. 3, 510 P.2d 1290, and *State v. Wilson & Wentworth,* 221 Kan. 359, 362, 559 P.2d 374. We need not iterate the rule. We conclude from the evidence in the record that as a matter of law the jury could not reasonably find Smith guilty of the conspiracy beyond a reasonable doubt and Smith's motion for acquittal should have been sustained.

Accordingly the judgment convicting James E. Smith of conspiracy to commit aggravated robbery against Myrl W. Fletcher is reversed and it is ordered he be released from the sentence imposed thereon.

We turn next to a point raised by Roberts and Smith concerning improper joinder. In view of our previous outright reversal of Smith's conviction our decision on this point affects Roberts' appeal only. He was charged and convicted of aggravated robbery, conspiracy to commit aggravated robbery, aggravated burglary and misdemeanor theft of a pistol in connection with the Fletcher incident. He was not charged and there was no evidence introduced connecting him with the Wishing Well incident.

Counsel for Roberts moved for a separate trial, assigning as his reasons that the state's evidence at the preliminary hearing as to the Wishing Well incident was wholly unrelated to the crimes with which he was charged.

The controlling statute is K.S.A. 22-3202 (3) (now 1976 Supp.) which provides:

"Two or more defendants may be charged in the same complaint, information or indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting the crime or crimes. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

There was no evidence that Roberts participated in the Wishing Well incident. There was no evidence the two crimes were connected or that the robbery at the Wishing Well was planned at the time the Fletcher robbery was planned. The theft of the pistol from Fletcher's apartment by Roberts was not for the purpose of securing its use at the Wishing Well.

In *State v. Williams & Reynolds,* 217 Kan. 400, 536 P.2d 1395, this court emphasized the last part of this statute, holding it was proper to try the defendants, Williams and Reynolds, together for aggravated robbery although Reynolds was also charged with unlawfully possessing a pistol. This court approved the trial court's reasoning that the possession of the revolver was part of the·initial crime and joinder was therefore proper. Here, however, Roberts was not charged in the Wishing Well incident. The attempt of the state to identify the pistol taken from Fletcher was not for the purpose of tying Roberts to the Wishing Well robbery. Taylor and Crittenden were the only ones charged in the robbery at the Wishing Well.

The statute K.S.A. 22-3202, now amended, speaks about two different matters, paragraphs (1) and (2) the joinder of charges against a single defendant and paragraph (3) the joinder of defendants. In *State v. Adams,* 218 Kan. 495, 505, 545 P.2d 1134, the rules governing joinder of charges are set forth with respect to a single defendant charged with separate crimes. In such case joinder if within the guidelines of the statute rests in the sound discretion of the trial court. The same is true when two or more defendants have participated in a crime or separate crimes when all have participated in all crimes charged. See *State v. Cameron & Bentley,* 216 Kan. 644, 533 P.2d 1255.

Our present case presents an entirely different situation. We have different crimes arising from two unconnected incidents or transactions. Two of the defendants, Roberts and Smith, did not participate and were not charged with any crime arising from the Wishing Well incident. The two transactions were not a part of a common scheme.

1 Wright's Federal Practice and Procedure, pp. 322-324, 326-329, discusses Federal Rule 8 (a) and (b), which is the same as K.S.A. 22-3202 (1) and (3). There the discussion specifically includes the situation "in which two defendants are jointly charged with committing an offense, and there is an unrelated

charge that on some other occasion one of the defendants committed a similar offense. Again joinder is not permitted. . . ." (pp. 325-326.)

This discussion also states:

" . . . If joinder is improper, severance is not a mere matter of discretion, and the overwhelming weight of authority is that a joint trial cannot be regarded as harmless error. . . ." (pp. 328-329.)

and also:

" . . . If there has been misjoinder, the trial court has no discretion to deny the motion, and the appellate court may not consider the failure to do so harmless error. . . ." (p. 337.)

The conclusions expressed in Wright's Federal Practice and Procedure appear to coincide with those reached by drafters of the Standards Relating to Joinder and Severance, as finally approved by the American Bar Association House of Delegates. (See approved draft ABA Standards for Criminal Justice, Joinder and Severance, p. 13.)

We conclude two or more defendants may be joined and tried together (1) when each of the defendants is charged with accountability for each offense included, or (2) when each of the defendants is charged with conspiracy and some of the defendants are also charged with one or more offenses alleged to be in furtherance of the conspiracy, or (3) when in the absence of a conspiracy it is alleged the several offenses charged were part of a common scheme or were so closely connected in time, place and occasion that proof of one charge would require proof of the others.

We further conclude if two or more defendants have been tried together and none of the requirements in the preceding paragraph have been met a misjoinder results and is an absolute ground for reversal and separate trials. (See Vernon's Kansas Statutes Annotated, Code of Criminal Procedure, § 22-3202, n. 10, p. 669; and Wright's Federal Practice and Procedure, *supra*.)

Therefore the judgment and convictions of Charles D. Roberts are reversed and the case as to him is remanded for a new trial.

We turn now to a point raised by all four defendants and in view of our decision on the appeal of James E. Smith this point concerns only the appeals of Roberts, Crittenden and Taylor. The point relates to the admissibility of a confession or statement made by Charles D. Roberts to Officer Jerry Fraipont of the

Wichita robbery squad, which statement implicated the other defendants in the Fletcher robbery.

In advance of trial a lengthy hearing was held on a motion to suppress as provided for in K.S.A. 22-3215, commonly referred to as a *Jackson v. Denno* hearing. At the close of the hearing the court made the following ruling:

"THE COURT: Well, it is pretty basic that in order for a statement or admission to be voluntary, insofar as voluntariness is defined under Miranda, and like cases, the statement or admission must not only be free of any physical or psychological threats, the statement must be free of any encumbrances of promises upon which the declarant might rely. And those prerequisites have to be weighed in the light of the individual who is making the statements, and the testimony in this case was that there were statements that there would be more leniency with cooperation, that if the story wasn't correct, why, it could result in heavier charges being filed, and I think with the statement to the effect if charges could be substantiated. But those statements have to be construed to be a promise, and coupled with the testimony of Dr. Kurth in this case, knowledge of happenings in and of itself does not give rise to the voluntariness of the statement. The surrounding circumstances and events in the instant case showed that up until the time, at least as far as the evidence is concerned, that statements were made concerning possible leniency or possible resulting hardships, no statement was made by the defendant Roberts.

"This statement was under the law and the facts of this case and the testimony of the expert witness not intelligently and voluntarily given. The motion to suppress the statement is sustained."

Roberts testified at the trial in his own behalf. On rebuttal the state again proposed to introduce this involuntary statement of Roberts by calling Officer Fraipont. The proposal was objected to and argued outside the presence of the jury. The court then ruled that since Roberts had taken the witness stand "he waived his right against self-incrimination." Officer Fraipont was then called by the state and testified. He was permitted to iterate the involuntary statements by Roberts which implicated Roberts and the other codefendants in the conspiracy and robbery charges arising out of the Fletcher incident.

This court, in line with *Harris v. New York,* 401 U.S. 222, 28 L.Ed.2d 1, 91 S.Ct. 643, has held that a defendant's statement or confession may be used for impeachment purposes when the defendant takes the stand even though the statement is not admissible in the state's case in chief because the state failed to have a hearing in camera to determine its voluntariness *(State v. Osbey,* 213 Kan. 564, 517 P.2d 141) or because *Miranda* warnings were not given *(State v. Boone,* 220 Kan. 758, 556 P.2d 864). See

also *State v. Greene,* 214 Kan. 78, 519 P.2d 651, and *State v. Andrews,* 218 Kan. 156, 542 P.2d 325.

The purpose for the distinction made in permitting such a statement or confession in evidence for impeachment purposes and not in the state's case in chief rests on the different bases for the exclusions. When a statement or confession is found to be involuntary it is excluded from evidence because it is unreliable and not trustworthy. A coerced confession is not based on knowledge and truth for it originates from coercion and a personal desire of the defendant to alleviate existing pressures. On the other hand a statement or confession may be excluded from evidence in the state's case in chief if *Miranda* warnings were not given or if no hearing was held to determine its voluntary nature. These reasons for exclusion are not based on the fact the statement is unreliable or untrustworthy. The statements are withheld from evidence in the state's case in chief as a sanction for failure to warn a defendant or for failure to hold the hearing required. When the defendant who made such a statement takes the stand as a witness the facts surrounding the taking of the statement may be brought out and the reliability and trustworthiness of the prior statement may be fully explored including the effect of a failure to warn. The previous sanction imposed is removed in the interest of truth and justice.

However, we have never held that a statement can be used for impeachment purposes when a court has held a hearing and previously determined the statement inadmissible because it was not intelligently and voluntarily made.

In *State v. Osbey,* supra, p. 574, the court noted there was not the slightest hint the statement was involuntary. In *State v. Boone,* supra, this court holds:

"A statement made by an accused after receiving his *Miranda* warnings and after asking to see his attorney, but before an attorney is present, may be used for impeachment purposes where the accused's testimony at trial is inconsistent with the statement *and there is no evidence that the statement given was involuntary or coerced.*" (220 Kan. 758, Syl. 14. Emphasis supplied.)

The United States Supreme Court in *Oregon v. Hass,* 420 U.S. 714, 43 L.Ed.2d 570, 95 S.Ct. 1215, stated:

"As in *Harris,* it does not follow from *Miranda* that evidence inadmissible against Hass in the prosecution's case in chief is barred for all purposes, always provided that 'the trustworthiness of the evidence satisfies legal standards.' 401 U.S., at 224. . . ." (p. 722.)

When a confession or statement by a defendant has been found involuntary it is unreliable and untrustworthy and it does not then satisfy the legal standards necessary for admissible evidence. It must then be excluded whether offered in the state's case in chief or for impeachment purposes. See 2 Wharton's Criminal Evidence, § 479, pp. 447-448; and 23 C.J.S., Criminal Law, § 817 (2), p. 162.

In view of the above holding our statement in *State v. Osbey,* supra, was overly broad when we stated:

" . . . Courts which have considered the issue are divided as to whether an accused who takes the witness stand in his own behalf may be impeached through use of a confession which is inadmissible in the prosecution's case in chief, *either because it was not voluntarily made or* because it was not otherwise properly qualified for admission as substantive evidence of guilt (see anno., 89 ALR 2d 478, Impeachment—Inadmissible Confession). . . ." (213 Kan. pp. 573-574. Emphasis supplied.)

Accordingly the underlined portion of the above statement is disapproved. We hold the statement of Roberts in the present case was improperly admitted for impeachment purposes.

The involuntary statement of Roberts tended to inculpate all four defendants. It therefore was inadmissible as against all defendants and the admission of the statement was error as to all four codefendants. (See also 22A C.J.S., Criminal Law, § 769, pp. 1161-1162.) The judgments and convictions of Charles D. Roberts, Robert Crittenden and Robert Taylor are reversed and their cases are remanded. A separate new trial is ordered for Roberts and a new trial is ordered for Crittenden and Taylor.

One additional point is raised on a procedural matter which will, no doubt, arise in subsequent trials and will be considered for the future guidance of the trial court. It concerns the admissibility of certain testimony of Cindy Fanning regarding statements made by the conspirators in her apartment. She testified that Roberts, Crittenden and Taylor were sitting in her apartment, talking about robbing "Tex" and that she gave Roberts the key. She testified Roberts got the gun from Tex's apartment. She further testified that they said they were going back and Charles and the other two blacks were going into the apartment where Tex was sleeping and if Tex got up "this white guy" was going to hit him over the head. She testified that they planned to get his money and other property, and that she didn't want to be there when this happened so she and Gary left with Smith.

Appellants argue that Cindy Fanning became a coconspirator when she turned the key over to Roberts and that before her testimony about conversations among coconspirators may be admitted in evidence there must be extrinsic evidence in the record that a conspiracy existed.

Their contention in this regard is based upon the holding in *State v. Nirschl,* 208 Kan. 111, 490 P.2d 917, where we say:

"Where an out of court declaration concerns a conspiracy to commit a crime and is relevant to its subject matter and made during the existence of the conspiracy, evidence extrinsic to such out of court declaration must be in the record to establish some substantial factual basis of the existence of such conspiracy, before heresay [*sic*] evidence *by a third party witness or witnesses* may be admitted as an exception to the rule. (K.S.A. 60-460 [*i*] [2].)" (Syl. 2. Emphasis supplied.)

In *Nirschl,* defendant attempted to introduce testimony of three people as to conversations they had with Robert Brunch and other conversations between the defendant and Brunch which they overheard to establish a conspiracy between Brunch and the sheriff. This was a third person situation as pointed out in *State v. Champ,* 218 Kan. 389, 543 P.2d 893, in which Justice Miller distinguishes a prior case based on the rule defendant urges here:

" . . . *Goyens* is readily distinguishable from the case at hand. The witness in *Goyens* was a law-enforcement officer; the statements about which he testified were made to the officer by the alleged co-conspirator who was not a witness." (p. 390-391; see *State v. Goyens,* 110 Kan. 421, 204 Pac. 704.)

The purpose of the statute is to let in testimony by a third person concerning declarations of a defendant's fellow conspirator to prove the defendant's involvement in a crime. However, before such third party statements can be used as evidence against a defendant there must be evidence a conspiracy between the out of court declarant and defendant actually did exist. The section deals with vicarious admissions included in agency relationships. Wharton's Criminal Evidence in discussing the section states:

"Where it appears that two or more persons have entered into an agreement to commit a crime—and hence are guilty of conspiracy—any act or declaration of a conspirator during such conspiracy, and in furtherance thereof, is admissible, in a prosecution for the target crime, as substantive evidence against any co-conspirator on trial. The theory of admissibility is that each party to an agreement to commit a crime has become an 'agent' for the other and has, in effect, entered into a 'partnership in crime.' . . ." (3 Wharton's Criminal Evidence, § 642, pp. 321-327.)

K.S.A. 60-460 in pertinent part provides:

"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

. . . . . . . . . . . . . . .

"(i) *Vicarious admissions.* As against a party, a statement which would be admissible if made by the declarant at the hearing if (1) the statement concerned a matter within the scope of an agency or employment of the declarant for the party and was made before the termination of such relationship, or (2) the party and the declarant were participating in a plan to commit a crime or a civil wrong and the statement was relevant to the plan or its subject matter and was made while the plan was in existence and before its complete execution or other termination, or (3) one of the issues between the party and the proponent of the evidence of the statement is a legal liability of the declarant, and the statement tends to establish that liability;"

Appellants have misinterpreted the statute and its case law. K.S.A. 60-460 (*i*) addresses a third party situation. Its requirements apply when the party (defendant) and the declarant (coconspirator) are participating in a plan to commit a crime and a third person (witness) is later called to testify as to the coconspirator's statements made outside the presence of the defendant concerning the conspiracy for the purpose of establishing defendant's participation in the conspiracy and crime. As previously pointed out the theory of admissibility is that each party to the conspiracy becomes an agent for the others. Therefore as an agent his statements to a third person bind not only himself but the others for whom he is acting. Under this theory of admissibility the conspiracy out of which the agency arises must be proven before the third party may testify against a coconspirator as to the declarant's statements made in the absence of the defendant-coconspirator.

This is not such a case. The statements here were made in the presence of all conspirators. The statements were not made to a third party. A conspiracy is an agreement with another person to commit a crime or to assist in the same. The statements of persons present when the conspiracy is being consummated are admissible as matters accompanying an incident to the transaction or event; as such they are part of the *res gestae.* Such statements by which the agreement was reached may be established by the testimony of anyone present when the agreement was alleged to have been entered into. The testimony of Cindy Fanning was admissible to prove the conspiracy.

We have examined all other points raised by Roberts, Crittenden and Taylor and they relate to procedural matters which may or may not arise again in subsequent retrials; therefore we decline to decide such abstract questions.

By way of summary to what has previously been decided in the foregoing opinion we hold: (1) The appellant James E. Smith should have been and is hereby acquitted on the charge of conspiracy to commit robbery for lack of evidence; (2) the judgment and convictions of Charles D. Roberts are reversed on appeal and his case is remanded for further separate proceedings; and (3) the judgment and convictions of Robert Crittenden and Robert L. Taylor are reversed on appeal and their cases are remanded for further proceedings.