No. 49,046

STATE OF KANSAS, *Appellee,* v. JERRY WAYNE SMITH and CAROL J. MILLER, *Appellants*

(585 P.2d 1006)

Opinion filed October 28, 1978.

*William A. Wells,* of Wichita, argued the cause and was on the brief for appellant Carol J. Miller.

*Clyde Wendelken,* of Wichita, argued the cause, and appellant Jerry Wayne Smith was on the brief *pro se.*

*Stuart W. Gribble,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal by defendants Jerry Wayne Smith and Carol J. Miller from a jury verdict finding them guilty of aggravated robbery (K.S.A. 21-3427), aggravated kidnapping (K.S.A. 21-3421), and three counts of kidnapping (K.S.A. 21-3420). These convictions resulted from defendants' acts during a robbery of the Fourth National Bank in Wichita.

On January 6, 1975, Isaac Linder was making routine early morning rounds at the Fourth National Bank in Wichita when he was accosted by two men, hit on the head with a pistol, and his

gun, flashlight and keys were taken. He was forced into the bank where his hands were tied behind him with wire and his face was covered. The assailants were wearing ski masks and gloves. One of the assailants was wearing a black hat with white trim, plaid pants, and tennis shoes.

During the next few minutes other employees arrived—Robert Marts, Margaret Sanchez and Etta Bloomcamp. They were forced to go to the basement where they were bound with wire. Each had his or her head covered to prevent sight. The contents of the night depository were taken. The victims did not see the two men at work, but they heard the contents of the night depository being removed.

The victims freed themselves and police were summoned. The defendants apparently escaped in a maroon pickup truck with a white cab-over camper that belonged to Linder. The truck was later found three blocks from the bank.

About 7:15 that morning, Trooper David McGlasson of the Kansas Highway Patrol stopped to assist two black men changing a tire on a black over tan Cadillac with Oklahoma tags. He later identified the clothing the men were wearing as matching the clothing description given by the victims and by the officers who arrested the men. The trooper asked their names, whether they had been in Wichita the previous night, and where they had entered the turnpike. They told him they had entered the turnpike at Kansas City. While driving down the turnpike after his conversation with the men, the trooper recalled that the back window of the Cadillac was frosted over. He knew the window would have been defrosted if the men had driven from Kansas City, so he radioed the Wellington exit, gave a description of the car, and asked the attendant to check the turnpike ticket and advise him where the car had entered the turnpike. Fifteen minutes later the attendant informed him the two men had entered at the South Wichita toll gate. This information was relayed to the police dispatcher and subsequently broadcast by various other dispatchers, along with a description of the vehicle and the clothing worn by the two men. Sheriff's officer Gary Sinclair of Newkirk, Oklahoma, and Trooper Roger Sixkiller of the Oklahoma Highway Patrol received these broadcasts and stopped the two men near Tonkawa, Oklahoma, at approximately 8:20 a.m. on January 6, 1975. The suspects were placed under arrest. Trooper Sixkiller

had not received a description of the two men; his reports stated only that there were three men, not two, that they were black, and the reports also stated the license tag number and color of the car. The officers made a cursory search of the vehicle for concealed weapons and a pat-down search of the two men.

Defendants were advised of their *Miranda* rights by Pete Litton, Tonkawa Chief of Police, at the scene of their arrest. They were then taken to the Tonkawa Police Department by Trooper Sixkiller, and the Wichita Police Department was notified of the arrest. Officer Sinclair then went to Newkirk, Oklahoma, where he applied for and obtained a search warrant to search the vehicle.

No evidence was taken prior to securing the search warrant. When Sinclair returned to the Tonkawa Police Department with the search warrant, defendant Smith was asked to empty his jacket pockets. Among the contents were several checks that had been marked for deposit with the Fourth National Bank in Wichita. Defendants were placed in jail and booked. Subsequently, their car was searched and zippered money bags belonging to the bank were found in the trunk. In addition, the officers found several personal items which had been taken from Linder at the scene of the crime, including his glasses, personal papers, and a piece of wire matching the wire used to tie up the bank employees.

Each of the defendants was found guilty on the charges of aggravated robbery, aggravated kidnapping, and three counts of kidnapping. Defendants appeal.

I.   Sufficiency of Evidence

Defendants' first issue on appeal goes to the sufficiency of the evidence and whether the state failed in its burden to properly identify them. Defendants contend that because the bank employees' heads were covered they could not make a positive identification, and that identifications made were based upon general build and eyes. In addition, Trooper McGlasson, after stopping to aid defendants in changing their tire, was unable to make a positive identification.

In *State v. Wade,* 203 Kan. 811, 813-14, 457 P.2d 158 (1969), this court stated:

"Where the sufficiency of evidence is being reviewed, this court's function is limited to ascertaining whether there was a basis in the evidence for a reasonable

inference of guilt. [Citations omitted.] Our law recognizes the jury is the exclusive judge of all material questions of fact and is entitled to draw reasonable inferences from the evidence. (*State v. Greenwood,* 197 Kan. 676, 421 P.2d 24.) If the evidence tends to disclose the offenses charged were committed, and the defendant committed them, the question is for the jury to decide, even though the evidence is weak. (*State v. Townsend,* 201 Kan. 122, 439 P.2d 70; *State v. Dill,* 182 Kan. 174, 319 P.2d 172.)"

In the present case, although the bank employees had articles of clothing over their heads to prevent them from seeing defendants, some of them were able to catch a glimpse of various items of apparel worn by each of the defendants. The security guard at the bank testified as to the plaid slacks and black hat worn by one of the men. These items of clothing were later identified by Trooper McGlasson as having been worn by one of the men changing the tire on the turnpike. At trial McGlasson identified a folder filled with identification cards and operators' licenses as the one produced by defendant Smith upon his request for driver's identification on the turnpike. A bank employee, Robert Marts, made a positive in-court identification of one of the defendants based upon his height, his eyes, and his general build. Several of Linder's personal belongings, along with items identified as property of the bank, were found in the trunk of the car. Several checks marked for deposit at the bank were found on the person of defendant Smith.

The bank employees were unable to make a positive identification of defendants at the lineup, but the evidence, although circumstantial, appears sufficient to place defendants at the scene of the crime. Circumstantial evidence can be used to prove any element of a crime. *State v. Johnson,* 220 Kan. 720, 722, 556 P.2d 168 (1976). We believe there was a basis in the evidence for the jury to determine a reasonable inference of guilt.

II. Probable Cause and Illegal Search

Defendants contend the trial court erred in admitting evidence seized as a result of an arrest without probable cause and from an illegal search and seizure. K.S.A. 22-2401 sets forth the conditions under which a law enforcement officer may make an arrest.

We have considered the issue of probable cause in several recent cases. In *State v. Lamb,* 209 Kan. 453, 467, 497 P.2d 275 (1972), we stated:

"Probable cause exists where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are

sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. (*Carroll v. United States,* 267 U.S. 132, 162, 69 L.Ed. 543, 45 S.Ct. 280 [1925].)"

In *State v. Evans,* 219 Kan. 515, 521, 548 P.2d 772 (1976), we said:

"Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. . . ."

In *State v. Barnes,* 220 Kan. 25, 28, 551 P.2d 815 (1976), we held as follows:

"It is not necessary that the evidence giving rise to such probable cause be sufficient to prove guilt beyond a reasonable doubt nor must it be sufficient to prove that guilt is more probable than not. It is only necessary that the evidence leads the officer to believe that guilt is more than a mere possibility. (*State v. Curtis,* 217 Kan. 717, 538 P.2d 1383.)"

Based upon testimony regarding the dispatch reports received by both Officer Sinclair and Trooper Sixkiller, which contained a description of the car, the license tag number, details of the robbery, and a description of the clothing worn by the two men, we believe there was sufficient probable cause to arrest defendants. We are not prevented from making this finding because varying reports were received regarding the number of men believed to have robbed the bank or because Trooper Sixkiller did not receive the same information regarding defendants' clothing as that which was received by Officer Sinclair. We have stated it is not necessary that all the facts in a dispatch report be within the personal knowledge of the arresting officer. *State v. Buckner,* 223 Kan. 138, 142, 574 P.2d 918 (1977); *State v. Clark,* 218 Kan. 726, Syl. ¶ 2, 544 P.2d 1372 (1976). Defendants' allegation of lack of probable cause is without merit.

We turn to the sufficiency of the affidavit for the search warrant. Defendants contend Officer Sinclair was not in possession of sufficient information to obtain a proper search warrant at the time the vehicle was stopped. We have carefully examined the statutes and case law of the State of Oklahoma, as well as copies of the affidavit and the search warrant. The facts contained in the affidavit are more than sufficient to support the issuance of a proper search warrant, notwithstanding the fact Officer Sinclair's oral statements before the Oklahoma court were not recorded. See 22 Okla. Stat. Ann. § 1223; *Looney v. State,* 520 P.2d 814 (Okla. Crim. 1974).

III. Admission of Federal Court Transcript

Defendants next argue it was error to admit and consider the transcript of a suppression hearing held before the United States District Court for the District of Kansas, thus tainting the suppression hearing and denying the defendants' right to due process of law.

It would appear defendants are correct in their contention that it was error to admit the former testimony. K.S.A. 60-460(c)(2) requires unavailability of the declarant and the situation at bar does not indicate the witnesses were unavailable to testify at trial. In fact, each was present and was called by defense counsel to be cross-examined. We hold it was error for the trial court to allow the testimony to be admitted; however, we cannot say defendants were denied their right to due process. No prejudicial error was shown.

IV. Incidental Crimes and Duplicity

Defendants argue the facts giving rise to the charge of kidnapping and aggravated kidnapping were also incident to the charge of aggravated robbery and are duplicitous of such other charge, and were not separate and distinct offenses under all facts and circumstances of the crimes.

We have construed K.S.A. 21-3420, pertaining to kidnapping, to require no particular distance of removal, nor any particular time or place of confinement. *State v. Buggs,* 219 Kan. 203, 214, 547 P.2d 720 (1976). One of the four objectives enumerated in the statute must be satisfied. We are concerned here with the second objective, that of facilitating flight or the commission of any crime. We have discussed the difference between a taking which is facilitating the commission of a crime and a taking which is merely incidental to the main crime:

"We therefore hold that if a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

"(a) Must not be slight, inconsequential and merely incidental to the other crime;

"(b) Must not be of the kind inherent in the nature of the other crime; and

"(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." *State v. Buggs,* 219 Kan. at 216.

In the present case the actions of defendants in forcing the bank employees into the basement were clearly intended to

facilitate flight and aid in the commission of a crime, pursuant to K.S.A. 21-3420(b). Applying the tests enumerated above, when the taking or confinement is alleged to have been done to facilitate the commission of another crime, defendants' contentions must fail.

One of the victims, Linder, was accosted by defendants while making his early morning rounds outside the bank. He was struck on the head with a pistol, his gun and keys were taken, and he was forced into the basement of the bank where he was tied up. The taking and subsequent confinement of Linder was neither slight nor inconsequential. The act of deliberately moving him from the exterior to the interior of the bank, coupled with the bodily harm done to his person, was clearly designed to facilitate commission of the crime of bank robbery and cannot be considered "slight, inconsequential and merely incidental to the other crime." The taking and confining of the other three bank employees was equally important to the facilitation of the crime. The employees were bound and confined in the basement in order to more easily reach the contents of the night depository and to substantially lessen possible detection of the crime. Defendants' reliance on the California cases of *People v. Daniels,* 71 Cal. 2d 1119, 80 Cal. Rptr. 897, 459 P.2d 225 (1969); *People v. Williams,* 2 Cal. 3d 894, 88 Cal. Rptr. 208, 471 P.2d 1008 (1970), *cert. denied* 401 U.S. 919, 27 L.Ed.2d 821, 91 S.Ct. 903 (1971); and *People v. Levy,* 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842, *cert. denied* 381 U.S. 938, 14 L.Ed.2d 701, 85 S.Ct. 1770 (1965), is misplaced. These cases were distinguished in *Buggs.*

Defendants contend the facts giving rise to the charges of kidnapping and aggravated kidnapping are duplicitous to the charge of aggravated robbery and are not separate and distinct offenses.

Duplicity is defined as "the joining in a single count of two or more distinct and separate offenses." 1 Wright, Federal Practice and Procedure: Criminal § 142 at 306 (1969). See also *State v. Dorsey,* 224 Kan. 152, 578 P.2d 261 (1978). In the case at hand each count in the information contained only one offense. Defendants' argument is without merit.

V.   Double Jeopardy

Defendants contend they were subjected to double jeopardy as the charges against them in the information and as prosecuted

during the trial are based on the same facts and circumstances of a previous prosecution and conviction in the United States District Court for the District of Kansas.

The question of double jeopardy was recently discussed in *State v. Dolack,* 216 Kan. 622, 533 P.2d 1282 (1975), in which this court quoted with approval the language of the court in *North Carolina v. Pearce,* 395 U.S. 711, 23 L.Ed.2d 656, 89 S.Ct. 2072 (1969), pertaining to the double jeopardy clause found in the Fifth Amendment to the United States Constitution, enforceable against the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 23 L.Ed.2d 707, 89 S.Ct. 2056 (1969); *State v. Gustin,* 212 Kan. 475, 510 P.2d 1290 (1973); *Jarrell v. State,* 212 Kan. 171, 510 P.2d 127 (1973). See also Kan. Const. Bill of Rights, § 10.

In *North Carolina,* the court stated that the guarantee against double jeopardy protects against a second prosecution for the same offense after acquittal, protects against a second prosecution for the same offense after conviction, and protects against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. at 717; *State v. Dolack,* 216 Kan. at 631.

The thrust of defendants' argument appears to lie in the belief that they should not be tried for both state and federal charges arising from the same acts of violence. In K.S.A. 21-3108 (now 1977 Supp.), pertinent sections dealing with the issue of former prosecution are set forth:

"(3) A prosecution is barred if the defendant was formerly prosecuted in a district court of the United States . . . for a crime which is within the concurrent jurisdiction of this state, if such former prosecution:

"(a) Resulted in . . . a conviction . . . and the subsequent prosecution is for the same conduct, unless each prosecution requires proof of a fact not required in the other prosecution . . . ."

Defendants were convicted of the crime of bank robbery in the United States District Court, and of aggravated robbery, aggravated kidnapping, and three counts of kidnapping in the state court. Defendants contend the same element of force and violence was used to convict them of both the federal and state charges.

It is well settled that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which

is not required by the other. *Blockburger v. United States,* 284 U.S. 299, 304, 76 L.Ed. 306, 52 S.Ct. 180 (1932). See also *Brown v. Ohio,* 432 U.S. 161, 53 L.Ed.2d 187, 97 S.Ct. 2221 (1977); *State v. Worth,* 217 Kan. 393, 537 P.2d 191 (1975), *cert. denied* 423 U.S. 1057, 46 L.Ed.2d 647, 96 S.Ct. 792 (1976); *State v. Pruitt,* 216 Kan. 103, 531 P.2d 860 (1975).

Applying this test to the facts at hand, we must find that the elements of proof necessary for both convictions are different. The federal charge of bank robbery requires proof that the bank in question has some federal connection; *i.e.,* it was insured by the Federal Deposit Insurance Corporation; whereas, the state charges of aggravated robbery, aggravated kidnapping, and kidnapping require elements of proof having nothing to do with the federal crime of bank robbery. It must also be noted that the acts giving rise to the state charges were different from those triggering the federal indictment. The act of robbing the Fourth National Bank was not the same act as the aggravated robbery of Linder. Both acts took place at different times, although they were done in the course of the bank robbery.

We find defendants were not subjected to double jeopardy.

VI. Speedy Trial

Defendants contend the state's lack of diligence resulted in denial of their right to a speedy trial. Their allegation is directed to the time lapse between the arrest and the moment they were transported from the El Reno Reformatory in El Reno, Oklahoma, to the Sedgwick County jail in Wichita, Kansas, to face state charges. Federal charges were leveled against defendants on January 6, 1975, and they were arraigned before a federal judge the following day. Jury trial in federal court lasted from February 5 to February 10, 1975, at which time they were returned to the El Reno Reformatory to await sentencing which took place on April 7, 1975. The record indicates a detainer dated May 5 was filed by the Kansas prosecutor's office and received by the warden at El Reno on May 21. Defendants were notified of its existence about June 1. On June 26, defendant Smith wrote to the clerk of the court of common pleas for a statement of charges against him and also filed a motion for a speedy trial. The letter was forwarded to the district attorney, but defendant received no response. Defendant Miller requested a speedy trial also, although the exact date of the request cannot be determined from the record. De-

fendants claim their attorneys at the federal level checked with state authorities in January, but could discover no state charges pending against defendants.

On August 8, defendants were taken from the El Reno Reformatory to the Sedgwick County jail and were arraigned a short time later. The state proceedings continued rapidly from this date, and after numerous and lengthy pretrial motions the case went to trial on November 17, a verdict of guilty was rendered on November 25, and defendants were sentenced on December 12, 1975. There is a dispute as to whether state charges were issued on January 10, 1975, against defendants. The complaint is dated January 10, but was not filed until September 3. The state claims it was waiting to file charges until the trial in federal court had ended. Defendants allege substantial prejudice resulted from the delay in filing state charges because of the erasure of police dispatch tapes relating to the bank robbery and because their college education courses at El Reno were interrupted by the late action of the state.

We addressed the issue of speedy trial in *State v. Otero,* 210 Kan. 530, 502 P.2d 763 (1972). See also *State v. Clark,* 222 Kan. 65, 563 P.2d 1028 (1977); *State v. Fennell,* 218 Kan. 170, 542 P.2d 686 (1975); *State v. Dolack,* 216 Kan. at 622; *State v. Smith,* 215 Kan. 34, 523 P.2d 691 (1974); *State v. Hemminger,* 210 Kan. 587, 502 P.2d 791 (1972). The case of *Barker v. Wingo,* 407 U.S. 514, 33 L.Ed.2d 101, 92 S.Ct. 2182 (1972), provided a balancing test in which the conduct of both prosecution and accused is to be weighed. We adopted this test in *State v. Otero,* 210 Kan. at 532-33. *Barker* identifies four factors to be considered when determining whether the accused has been denied a speedy trial. They are: (1) Length of the delay, (2) reason for the delay, (3) the defendant's assertion of his rights, and (4) prejudice resulting to the defendant. In *Barker,* the court stated:

"We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." (p. 533.)

Applying the criteria set forth in *Barker,* we must find defend-

ants were not deprived of a speedy trial. In considering the length of the delay, we will discuss only the time span from arrest to the moment defendants were notified of the state charges pending against them, since the heart of defendants' complaint goes to the alleged prejudice that resulted from their lack of knowledge of the state charges. This encompasses merely five months during which time the federal court trial and sentencing took place, although the fact federal proceedings were pending did not preclude the state from filing its charges.

The record does not indicate the delay was due to a deliberate attempt on the part of the state to undermine defendants' theory of defense, and we do not find that undue prejudice resulted from the delay. As the trial court noted, there was great speculation as to the importance and usefulness of the erased dispatch tapes. We do not believe the psychological stress and anxiety defendants allege they have suffered is the type contemplated in the cases of *State v. Otero,* 210 Kan. at 535, and *United States v. Mann,* 291 F. Supp. 268 (S.D.N.Y. 1968). Those cases dealt with delays amounting to many years, rather than a few months. In the present case we find defendants were not denied a speedy trial.

VII. Severance

Defendant Smith alleges the trial court erred in refusing to grant his motion for severance from the trial of defendant Miller, who was identified as being at the scene of the crime. Smith contends because the bank employees were unable to make a positive identification of him as being at the crime scene, he was unduly prejudiced by the presence of defendant Miller throughout the trial.

The statute governing joinder of two or more defendants for trial is K.S.A. 22-3202(3) (now 1977 Supp.), which allows joinder if the defendants are "alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting the crime or crimes." This court has repeatedly stated that the granting of separate trials lies within the sound discretion of the trial court and, absent an abuse of the exercise of the power of discretion, its action will not be set aside on appeal. *State v. Watie, Heard and Heard,* 223 Kan. 337, 342, 574 P.2d 1368 (1978); *State v. Duvaul,* 223 Kan. 718, 576 P.2d 653 (1978); *State v. Jackson,* 223 Kan. 554, 575 P.2d 536 (1978); *State v. Coe,* 223 Kan. 153, 574 P.2d 929 (1977); *State v. Roberts,* 223 Kan. 49, 574 P.2d 164 (1977).

In the present case the two defendants were charged with basically the same crimes arising out of the same transactions. The record does not indicate defendant Smith's theory of defense was antagonistic to that of his codefendant. Both defendants objected to the evidence which placed them at the crime scene, but neither asserted a defense or bolstered it with evidence that would have shown antagonistic theories. A bald assertion of prejudice resulting from refusal to grant a motion for a separate trial without supporting facts is not sufficient to show an abuse of discretion by the trial court. Defendants' argument must fail.

VIII. Effective Assistance of Counsel

Defendant Miller alleges error in the trial court's refusing to grant his motion for severance by requiring him to stand trial with defendant Smith, who appeared *pro se,* thus inhibiting defendant Miller's right to effective assistance of counsel. This contention is without merit. Defendant Miller was properly represented by William A. Wells, who was appointed by the trial court at the commencement of proceedings against Miller. Defendant Smith, while appearing in his own behalf, was aided by Clyde Wendelken, who appeared as co-counsel. Defendant Miller has failed to show how his case was prejudiced by Smith's *pro se* appearance and, absent a clear showing of prejudice, the trial court's ruling must stand.

IX. Instruction No. 8

Defendants contend the trial court erred in failing to adopt their requested jury Instruction No. 8. The instruction states:

"In order to find the defendants or either of them guilty of aggravated kidnapping, you must find beyond a reasonable doubt that bodily harm was inflicted by the alleged kidnapper after the act of kidnapping."

Defendants believe the facts giving rise to the charge of aggravated robbery occurred when Linder was confronted by two men with drawn guns, who relieved him of his gun and keys. Defendants state the facts show that after Linder attempted to call for help he was hit on the side of the head with a gun and was taken into the bank where his hands and feet were bound. The question on appeal is predicated on defendants' belief there must have been a second act of violence occurring during the actual asportation of Linder into the bank to give rise to the charge of aggravated kidnapping.

K.S.A. 21-3421 defines aggravated kidnapping as "kidnapping, as defined in 21-3420, when bodily harm is inflicted upon the person kidnapped." The statute does not require that the bodily harm occur before or after the actual kidnapping. The act of violence must occur in the course of the kidnapping and must coincide with at least one of the four objectives listed in 21-3420. It is clear Linder was struck on the head and forced into the bank to facilitate commission of the later crime of bank robbery. We find no error by the trial court in failing to adopt defendants' Instruction No. 8.

X. Instructions Nos. 2 and 3

Defendants contend the trial court erred in submitting Instructions Nos. 2 and 3 to the jury. These instructions relate to the elements which must be proven to find both defendants guilty of the crimes of aggravated kidnapping and kidnapping. Defendants' argument is based upon their earlier allegation that both crimes were merely incidental to the offenses of aggravated robbery and bank robbery. In light of our earlier discussion to the contrary, we find this point to be without merit.

XI. Failure to Poll Jury

Defendants argue the trial court erred in refusing counsel's request to poll the jury after return of its verdict and before discharge as to the effect, if any, of certain publicity which appeared in the local newspaper during the final stages of trial. The article does not appear in the record. In *State v. Stewart,* 219 Kan. 523, 548 P.2d 787 (1976), we set forth the guidelines to be followed by counsel in order to prove that members of the jury were aware of a newspaper article prejudicial to defendant. We stated that counsel for a defendant may request a poll of the jury after its verdict is returned, or counsel may subpoena the jurors on motion for a new trial to show they had knowledge of the article.

Inasmuch as the article in question is not before us, we cannot assume the trial court abused its discretion in finding the publicity to be "minimal" and in refusing to question the jury as to the effect of the publicity. Further, we note defense counsel did not avail themselves of the alternative to polling the jury, that of issuing a subpoena to each juror on motion for a new trial to show possible knowledge of the article.

Under the circumstances, we hold there has been no showing

defendants were deprived of a fair trial because of failure of the trial court to permit a polling of the jury.

XII. Remarks of Prosecutor

Defendants' final point on appeal alleges the trial court erred in overruling the defense motion for mistrial based upon remarks made by the prosecutor during closing argument. The remark in question was: "You have an overwhelming amount of evidence. One of the strongest cases I've ever had the luck to be a part of."

The often stated general rule regarding improper questions or statements made by the prosecutor is that before an objectionable question or statement made by the prosecutor will entitle the accused to a reversal of his conviction it must first appear that it was injurious to him and was likely to affect the jurors to his prejudice. *State v. King,* 219 Kan. 508, 548 P.2d 803 (1976); *State v. Kane,* 218 Kan. 13, 542 P.2d 335 (1975); *State v. Murrell,* 215 Kan. 10, 523 P.2d 348 (1974); *State v. Gauger,* 200 Kan. 515, 438 P.2d 455 (1968). In *Murrell* and *Kane,* we also recognized that the trial judge is more clearly able to judge the impact of a prosecutor's statement on the jury than are the members of this court.

Where the trial judge has pointed out the error to the jury regarding statements made by the prosecutor, we have also found no reversible error. *State v. Kane,* 218 Kan. at 16; *State v. Johnson,* 216 Kan. 445, 532 P.2d 1325 (1975); *State v. Warbritton,* 215 Kan. 534, 527 P.2d 1050 (1974). In the present case, the court, after proper objection from defense counsel, ruled that the prosecutor's personal opinion would be stricken from the argument. In addition, the court had earlier instructed the jury that statements made by counsel were not to be considered as evidence.

Defendant has relied on the case of *United States v. Grunberger,* 431 F.2d 1062 (2d Cir. 1970), in which remarks of a similar nature were found to have been improper and an aid in the court's finding of reversible error. There, the court stated:

"Each case must be scrutinized on its particular facts to determine whether a trial error is harmless error or prejudicial error when viewed in the light of the trial record as a whole, not whether each isolated incident viewed by itself constitutes reversible error. . . ." (p. 1069.)

The court noted that the issues were close and the government's case was "not particularly strong." The court felt the prosecutor's remark, coupled with other improprieties, indicated the defendant had not received an impartial trial.

The present case against defendants is not based upon weak evidence and we find no errors that would indicate defendants did not receive a fair and impartial trial. We find the statement made by the prosecutor was not injurious to defendants and prejudice did not result which might constitute reversible error.

The judgment of the trial court is affirmed.