STATE OF KANSAS, *Appellee,* v. DONALD MCQUEEN, *Appellant.*

No. 49,047

STATE OF KANSAS, *Appellee,* v. ELMER HARDYWAY, JR., *Appellant.*

(582 P.2d 251)

Opinion filed July 15, 1978.

*Jack Focht,* of Smith, Shay, Farmer & Wetta, of Wichita, argued the cause and was on the brief for appellant Donald McQueen.

*William D. Rustin,* of Rustin, Just & Dewey, of Wichita, argued the cause and was on the brief for appellant Elmer Hardyway, Jr.

*Harold T. Pickler,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Donald McQueen and Elmer Hardyway, Jr., were jointly charged with participating in eight separate criminal incidents occurring between January 29 and March 9, 1975. The charges originally included 29 counts against one or both of these defendants. The charges arising from three of the eight criminal incidents were severed for separate trials. These two defendants ultimately were tried jointly for participating in five criminal incidents involving a total of 21 counts. Some preliminary background must be given in order to understand the points discussed.

We will refer to the eight criminal incidents as (1) the Berry burglary, (2) the Jones burglary, (3) the Grove IGA robbery, (4) the Pawnee Plaza Mall conspiracy, (5) the McDonalds-Hillside robbery, (6) the McDonalds-Broadway robbery, (7) the Hickory House robbery, and (8) the Willie Stevens murder.

The McDonalds-Hillside robbery, the McDonalds-Broadway robbery and the Hickory House robbery involved a lone bandit. The trial court properly severed all charges arising from these incidents. The remaining charges were tried. A jury was unable to agree on a verdict in the Berry burglary and a mistrial was declared. The jury acquitted both defendants in the Willie Stevens murder. So—on appeal we are concerned with convictions in connection with the Jones burglary, the Grove IGA robbery and the Pawnee Plaza Mall conspiracy.

The present case is a sequel to *State v. Smallwood,* 223 Kan. 320, 574 P.2d 1361 (1978), and *State v. Moody,* 223 Kan. 699, 576 P.2d 637 (1978). The present defendants along with Smallwood and Moody participated in the Grove IGA robbery and the Pawnee Plaza Mall conspiracy. Smallwood and Moody were tried first and were convicted in separate trials. The fifth participant in these two crimes was Ray Meeks. He became the state's principal witness.

The first seven points on appeal concern both appellants. These seven points were presented in separate briefs but the arguments are identical in both briefs. Our decision on these seven points will apply equally to both appellants. Hardyway raises two addi-

tional points which will be treated separately and numbered eight and nine.

The first point involves the appellants' convictions for criminal injury to persons under count thirteen of the information. This count arose out of the Grove IGA robbery. The basic charge was aggravated battery. The trial judge instructed the jury that under this count the appellants might be found guilty of a lesser included offense, criminal injury to persons. The appellants were found not guilty of aggravated battery, but guilty of criminal injury to persons under K.S.A. 21-3431.

The provisions of K.S.A. 21-3431 are identical to those of K.S.A. 1976 Supp. 21-3431, defining criminal injury to persons. The provisions of these statutes are so vague and uncertain they fail to establish reasonably definite standards of guilt in accord with constitutional requirements of due process. (See *State v. Kirby,* 222 Kan. 1, Syl. ¶ 2, 563 P.2d 408 [1977]; *State v. Woods,* 222 Kan. 179, 186, 563 P.2d 1061 [1977]; and *State v. Sullivan & Sullivan,* 224 Kan. 110, Syl. ¶ 1, 578 P.2d 1108 [1978].) The convictions and sentences of both appellants for criminal injury to persons under count thirteen are reversed and set aside.

Appellants urge as their second point that the trial court erred in refusing to grant separate trials. They contend there was a misjoinder of both charges and parties under the guidelines of K.S.A. 22-3202 and 22-3204.

The first of these statutes sets guidelines for joinder of charges. The second provides for severance when two or more defendants are jointly charged. Our initial consideration is whether the joinder of charges was permissible. When joint charges are filed against two or more defendants K.S.A. 22-3202(3) governs. It reads:

"Two or more defendants may be charged in the same complaint, information or indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting the crime or crimes. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

If the joinder of charges is proper, then the question of severance and the granting of separate trials must be considered. Severance to avoid possible prejudice is covered by K.S.A. 22-3204 which reads:

"When two or more defendants are jointly charged with any crime, the court may order a separate trial for any one defendant when requested by such defendant or by the prosecuting attorney."

Even though joinder of charges may meet the requirements of K.S.A. 22-3202 the trial court should nevertheless grant separate trials under K.S.A. 22-3204 when severance appears necessary to avoid prejudice and ensure a fair trial to each defendant.

We will consider the joinder of charges first.

In *State v. Roberts,* 223 Kan. 49, 574 P.2d 164 (1977), this court examined the provisions of K.S.A. 22-3202(3) and held:

"Two or more defendants may be joined and tried together (1) when each of the defendants is charged with accountability for each offense included, or (2) when each of the defendants is charged with conspiracy and some of the defendants are also charged with one or more offenses alleged to be in furtherance of the conspiracy, or (3) when in the absence of a conspiracy it is alleged the several offenses charged were part of a common scheme or were so closely connected in time, place and occasion that proof of one charge would require proof of the others." (Syl. ¶ 2.)

In the present case after the charges on the McDonalds-Hillside robbery, the McDonalds-Broadway robbery and the Hickory House robbery were severed there remained the charges on the Berry burglary, the Jones burglary, the Grove IGA robbery, the Willie Stevens murder, the Pawnee Plaza Mall conspiracy, and the three firearms charges. Both Hardyway and McQueen were charged jointly and were alleged to be accountable for each of the offenses except for the Pawnee Plaza Mall incident and the three firearms charges. The first four incidents, the Berry burglary, the Jones burglary, the Grove IGA robbery and the Willie Stevens murder, were properly joined under *State v. Roberts,* supra, since each defendant was charged with accountability for each offense.

As to the three firearms charges—they arose out of crimes in which both parties participated. In *State v. Williams & Reynolds,* 217 Kan. 400, 536 P.2d 1395 (1975), this court held it was proper to try two defendants jointly for aggravated robbery and include a charge against one or both of the defendants for unlawfully possessing a pistol. When the unlawful possession of a firearm occurs during the commission of a primary crime charged against two defendants it is proper to join with the primary charge a count on unlawful possession of a firearm against the person, or persons, who unlawfully possess a firearm. Therefore, the firearm charges against the appellants in this case were properly joined with other charges filed against both appellants.

The final question on joinder of charges concerns the Pawnee

Plaza Mall conspiracy charge. Initially a complaint was filed charging both appellants with conspiracy to burglarize the Pawnee Plaza Mall. Conspiracy as defined by K.S.A. 21-3302 consists of two essential elements: (1) An agreement between two or more persons to commit or assist in committing a crime, and (2) the commission by one or more of the conspirators of an overt act in furtherance of the object of the conspiracy. (*State v. Daugherty,* 221 Kan. 612, Syl. ¶ 4, 562 P.2d 42 [1977].)

Testimony to establish the conspiracy under this charge was given by Ray Meeks, the same co-conspirator who testified in *State v. Moody,* supra. The details are more fully set forth in *Moody.* Suffice it to say Smallwood, Moody and Meeks were present when the agreement was first made to burglarize the mall. The following day Hardyway joined Smallwood and Moody to further plan the burglary. Hardyway, McQueen, Smallwood and Meeks were apprehended three days later in a vehicle en route to the mall. Two revolvers and a shotgun were found in the vehicle at the time the men were arrested. The two revolvers had been obtained by the appellants in one of the prior burglaries and in the Grove IGA robbery.

McQueen was not bound over on this charge at the preliminary hearing. Hardyway was bound over, tried and convicted. During the trial McQueen's presence in the vehicle with the other individuals, including Hardyway, was established by the testimony of the officers. McQueen was neither tried nor convicted on the charge because of his release at the preliminary hearing.

The Pawnee Plaza Mall charge does not fall within the first two tests for joinder of charges enunciated in *State v. Roberts,* supra, since McQueen was not included in the final charge and since all of the incidents were not in furtherance of a single conspiracy to commit them. So—we must decide if the Pawnee Plaza Mall incident was part of a common scheme or so closely connected in time, place and occasion to the Jones burglary and the Grove IGA robbery as to be in a series of acts or transactions constituting the crime or crimes. The statute K.S.A. 22-3202(3) speaks of participation in the same series of acts or transactions constituting the crimes. The Berry burglary, the Willie Stevens murder, the Jones burglary, the Grove IGA robbery, and the Pawnee Plaza Mall incident all occurred in the Wichita area within a period of 39 days. All were participated in to some degree by both appellants.

The revolvers recovered in connection with the Pawnee Plaza Mall conspiracy had been acquired by appellants in the Jones burglary and the Grove IGA robbery. In addition the last three incidents were closely related in time and place and they were criminal transactions in which Ray Meeks was a connecting link. He was a co-conspirator in all three of these crimes. Each of these three criminal transactions included a separate conspiracy participated in by Ray Meeks with one or both of the appellants.

We therefore believe the necessary connection between these criminal transactions exists and is sufficient under the facts and circumstances to satisfy the standard for joinder contemplated by the statute even though McQueen's participation in the Pawnee Plaza Mall incident may not have been sufficient to bind him over for trial on said charge. The criminal transactions were so closely connected that proof of the Pawnee Plaza Mall conspiracy required proof of the other crimes, including proof of how and where the weapons seized had been acquired by the conspirators.

We turn next to the question of severance. Severance under K.S.A. 22-3204 lies within the discretion of the trial court. The limitations on joinder and the provisions for severance are to prevent manifest injustice. When two defendants are charged with multiple crimes some prejudice necessarily will occur. When the evidence of participation and identity of those charged is clear and convincing, prejudice from a joint trial may not be great. However, when the evidence is clear and convincing as to one defendant and not so as to the other, failure to sever may well cause prejudice which will result in manifest injustice in violation of constitutional due process.

There is a material advantage in having defendants tried together for the crimes in which all have jointly participated during a short period of time. In a joint trial witnesses will have to testify but once. The saving of time and money to the state may be substantial. In the present case we doubt any savings in either time or money. The trial consumed a period of eight weeks and much time was spent in arguing and briefing questions on both joinder and severance. However, these considerations are secondary to giving each person accused a fair trial under the constitutional requirement. The question of possible prejudice to multiple defendants should be carefully considered before a severance under K.S.A. 22-3204 is denied.

In the present case the appellants point to three specific instances of alleged prejudice arising from evidence admitted at the trial. The first concerns a letter written by Hardyway to McQueen suggesting the possibility of disposing of Ray Meeks, the state's chief witness. Although the letter was admitted in evidence the court did instruct the jury that they were to consider it only in connection with the guilt or innocence of Hardyway. Appellants argue that such a limitation would be impossible to heed in the jury room. The next suggestion of prejudice comes from evidence of the charge against Hardyway on the Pawnee Plaza Mall conspiracy. McQueen was not charged and could not be convicted, yet testimony was introduced to establish he was present in the vehicle with Hardyway and the others. It is argued evidence of his participation was prejudicial. The third suggestion of prejudice comes from evidence concerning the statements Hardyway made after his arrest. Testimony of a detective as to these statements was admitted. The statements made were exculpatory in nature. The appellants argue the admission of the statements was a violation of the *Bruton* rule. Hardyway testified at the trial and was available for McQueen to cross-examine. The court limited the use and purpose of the statements in its instructions. The rule laid down in *Bruton v. United States,* 391 U.S. 123, 20 L.Ed.2d 476, 88 S.Ct. 1620 (1968), was not violated. See *State v. Sullivan & Sullivan,* supra.

The jury did acquit both appellants on the charges arising from the Willie Stevens murder. This indicates a proper weighing of the evidence on each charge rather than returning indiscriminate verdicts on all charges. In addition the jury failed to agree on any verdict on the charges arising from the Berry burglary. It seems apparent that the verdicts did not result from either guilt by association or guilt because of the number of charges tried together.

In view of McQueen's actual participation in the Pawnee Plaza Mall incident and the overall weight of evidence against the two appellants, we hold the failure to sever was not reversible error. We find beyond a reasonable doubt the failure to order separate trials for these appellants did not result in such prejudice as to prevent a fair trial. (See K.S.A. 60-2105, and *State v. Thompson,* 221 Kan. 176, Syl. ¶ 4, 558 P.2d 93 [1976].)

The third point concerns alleged grounds for a mistrial based

on juror misconduct. During the course of the trial it came to the court's attention that two of the jurors had overheard a conversation outside the courtroom among three persons who were spectators at the trial. The jurors brought this matter to the attention of the trial judge who questioned each of the jurors in the presence of counsel. The substance of the conversation was that it would not be hard to slip into the jury room with a shotgun and blow the jurors away.

The jurors identified two men, James Baker and Larry Smith, as the persons present when the remark was made. Both jurors said they considered the statement more a matter of joking than a serious threat. Each juror assured the trial judge the incident would have no effect on their thinking as far as the trial of the defendants was concerned. They also indicated they had said nothing to any of the other jurors about the incident and had made no response to the person making the statement.

No motion for a mistrial was made by either defendant at this time. Such a motion was made, however, later in the trial during the testimony of Ray Meeks. In referring to a conversation which took place at the house of one Johnnie B. Davis, Meeks indicated both defendants were present, as was Larry Smith. Upon the mention of Smith's name both defendants moved for a mistrial because of the previous incident involving the two jurors. The court overruled the motions.

The statutory authority for mistrials is found in K.S.A. 22-3423 which provides in pertinent part:

"(1)  The trial court *may* terminate the trial and order a mistrial at any time that he finds termination is necessary because  .  .  .

"(c)  Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution;  .  .  ." (Emphasis supplied.)

Terminating a trial and declaring a mistrial on one of the statutory grounds listed in K.S.A. 22-3423 is largely within the discretion of the trial court. A clear showing of abuse of discretion must be made before the decision of a trial court will be set aside on appeal. See *State v. Henson,* 221 Kan. 635, 562 P.2d 51 (1977); *State v. Wilson & Wentworth,* 221 Kan. 359, 559 P.2d 374 (1977).

Although the defendants allege they were prejudiced by the denial of their motions they have failed to affirmatively show any

harm to their substantial rights. It is conjecture at best to suggest the earlier incident outside the courtroom took on any greater significance in the minds of the two jurors involved after they heard Ray Meeks mention the presence of Larry Smith. The existence of prejudice becomes even more remote when the court considers that these two jurors were members of a panel which unanimously convicted the defendants of ten counts in the information, acquitted them of three counts and were unable to reach a verdict on eleven other counts. The verdicts themselves indicate the jury considered each count and the evidence necessary to prove it, and was not influenced by the event complained of.

The fourth point concerns the use of the inquisition statute by the state during an evening recess. The state called a witness, Osborne J. Smith. He claimed the Fifth Amendment privilege against self-incrimination and was excused. After the trial was recessed that evening the state made application to the court for permission to conduct an examination of this witness under the inquisition statutes. The application was granted.

K.S.A. 22-3101 in pertinent part provides:

"(1) If the attorney general, an assistant attorney general, or the county attorney of any county is informed or has knowledge of any alleged violation of the laws of Kansas, he may apply to a judge of the district court to conduct an inquisition. An application for an inquisition shall be in writing, verified under oath, setting forth the alleged violation of law. . . .

. . . . . . . . . . . . . . . .

"(3) . . . Any person who . . . refuses to . . . answer any proper question propounded during the inquisition, may be adjudged in contempt of court and punished by fine and imprisonment."

K.S.A. 22-3102 provides:

"No person called as a witness at an inquisition shall be required to make any statement which will incriminate him. The attorney general, assistant attorney general or county attorney may, on behalf of the state, grant any person called as a witness at an inquisition immunity from prosecution or punishment on account of any transaction or matter about which such person shall be compelled to testify and such testimony shall not be used against such person in any prosecution for a crime under the laws of Kansas or any municipal ordinance. After being granted immunity from prosecution or punishment, as herein provided, no person shall be excused from testifying on the ground that his testimony may incriminate him."

The inquisition was conducted. The witness was represented by counsel. The presiding judge ordered the witness to answer the questions. He was not granted immunity because the trial

court found that none of his answers to questions would incriminate him and the Fifth Amendment privilege was not available. Defense counsel were not advised of the inquisition until after it was over. Later a hearing was held in chambers concerning the use of the inquisition procedure and the propriety of using that means to obtain the testimony of the witness. Counsel for appellants argued before the trial court that this amounted to fundamental unfairness and denied the appellants equal protection and due process of law since it gave the state an improper advantage. Objections were overruled. The witness testified at the trial and the transcript from the inquisition was used by the state to refresh the memory of the witness in a few instances. The testimony of Smith concerned the furnishing of a 12-gauge shotgun to Hardyway for his use.

The cases cited by the state contain language which indicates that there are no time limitations on the use of the inquisition process, and that the investigatory powers of the state do not end with the conclusion of a preliminary hearing. See *State v. Jones,* 202 Kan. 31, 47, 446 P.2d 851 (1968), and *State v. Brecheisen,* 117 Kan. 542, 543, 232 Pac. 244 (1925). However, these cases did not involve the precise question at hand and such language does not constitute binding precedent.

When a witness refuses to answer questions on the ground his answers will incriminate him the trial court may hold a hearing in chambers to determine if the witness is justified in claiming the Fifth Amendment privilege. We see little difference in this and the use of the inquisition statute to examine justification, if any, for the claim of privilege. In the present case the witness was represented by counsel, his rights were protected, and the appellants were afforded the opportunity in chambers to learn of the nature and extent of his testimony.

When a witness called by the state refuses to testify and claims the Fifth Amendment privilege against self-incrimination, the court may hold a hearing in chambers to determine if the claim is justified or on the application of the prosecutor the court may hold inquisition proceedings under K.S.A. 22-3101, *et seq.,* to determine the validity of such claim.

Appellants' fifth point is that the court erred in failing to grant their motion for an in-camera inspection of all of the Wichita Police Department files having to do with the case. It is not clear

what records appellants were seeking by their motion. They indicate now they wanted information concerning a lineup identification and information on the pawning of a ring belonging to Willie Stevens, the murder victim.

K.S.A. 22-3212 places in the trial court a broad discretion to require disclosure of documents and other tangible objects which may be in the possession or under the control of the prosecution. The motion should be made prior to trial in order to allow reasonable time for disclosure and inspection. To obtain discovery of records or objects the defendant has the burden of showing the materiality of the same and the reasonableness of the request. (*State v. Glazer,* 223 Kan. 351, Syl. ¶ 6, 574 P.2d 942 [1978].) The trial court's ruling will be set aside only if an abuse of discretion is shown. (*State v. Brown,* 220 Kan. 684, 689, 556 P.2d 443 [1976].) The request for disclosure in this case was made during the trial. It appears over-broad in scope. The briefs of the appellants on this point are not keyed to the record and we are unable to find in the voluminous record the showing of materiality and reasonableness required. No abuse of discretion has been shown in this case.

The sixth point raised concerns appellants' convictions on both count eleven and count twelve. These counts arose out of the Grove IGA robbery. Count eleven covers the robbery and taking of $5,200.00 in the presence of five store employees including Larry L. Wolf. Count twelve covers the robbery and taking of a .38-caliber Charter Arms revolver from the person and in the presence of Larry L. Wolf.

The state attempts to justify the separate charges by contending there was a lapse of time between the two incidents. When the robbery was in progress Wolf was confronted in the office by one of the robbers who demanded and received the gun. Wolf was ordered to leave the office and then the money was taken. The state further contends count eleven charges aggravated robbery of the money belonging to Grove IGA, while count twelve separately charges aggravated robbery of a gun belonging to Wolf. These arguments are not persuasive. There was one store robbery. Both the money and the gun were kept on the store premises in connection with running the business. This court has held ownership of the property taken is not an element of robbery under K.S.A. 21-3426. (*State v. Glymph,* 222 Kan. 73, 74, 563 P.2d 422

[1977].) Multiple offenses cannot be carved out of a single robbery because of separate ownership of the property taken.

The state may not split a single offense into separate parts. When there is one wrongful act it does not furnish a basis for more than one criminal prosecution. (*State v. Lassley,* 218 Kan. 758, 761, 545 P.2d 383 [1976]; *State v. Dorsey,* 224 Kan. 152, Syl. ¶ 8, 578 P.2d 261 [1978].) The convictions and sentences on count twelve are vacated and set aside.

The seventh point concerns the giving of an instruction on recent possession of stolen property. In *State v. Crawford,* 223 Kan. 127, 573 P.2d 982 (1977), this court held the giving of the instruction, while no longer favored, was not error under the facts and circumstances of that case. In the present case the court advised the jury that the presumption only arises if the possession is recent, and it is overcome if there is a reasonable doubt the defendant possessed the stolen property. Again we do not favor giving this instruction but under the facts and circumstances of the case the giving of the instruction did not amount to reversible error.

The eighth point is raised by Hardyway. He contends the court's instruction limiting the use of evidence relating to the Pawnee Plaza Mall conspiracy to him was error because it emphasized the testimony. We do not agree. Such a limiting instruction is not only proper (see *State v. Cantrell,* 201 Kan. 182, 188, 440 P.2d 580, cert. den. 393 U.S. 944, 21 L.Ed.2d 282, 89 S.Ct. 315 [1968]) but in certain instances may be required in order to afford a codefendant a fair trial (see *State v. Sullivan & Sullivan,* supra, Syl. ¶ 4).

The ninth point raised by Hardyway concerns the refusal of the court to grant a judgment of acquittal on the Pawnee Plaza Mall charge. A co-conspirator's testimony standing alone may be sufficient to prove a charge of conspiracy. (*State v. Roberts,* supra, p. 60.) As to the sufficiency of the present evidence see *State v. Moody,* supra, where the testimony of Ray Meeks concerning an identical charge against Moody was held to be sufficient. The point is without merit.

In summary the convictions and sentences on count thirteen (criminal injury to persons) and on count twelve (robbery at Grove IGA in taking the revolver) are vacated and set aside. The balance of the convictions and sentences are affirmed.