IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,162

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER M. DALE,
*Appellant*.

SYLLABUS BY THE COURT

1.

Neither the Double Jeopardy Clause in the Fifth Amendment to the United States Constitution nor K.S.A. 21-3107(2)(a) absolutely prevent the continued prosecution of some counts in a prosecution after a criminal defendant has been convicted on other counts. If the continued prosecution follows a defendant's post-conviction appeal that sought a new trial and, on remand, a defendant is found guilty of a greater offense after a lesser included offense has been affirmed, a court may, absent application of one of a limited number of exceptions, vacate the sentence for the lesser included offense and impose a sentence for the greater offense.

2.

Under the facts of this case, convictions for two counts of aggravated robbery were not multiplicitous even though they arose from one transaction that constituted unitary conduct because robbers, while armed with a BB gun, took property in the possession or control of two individuals by force directed at both.

1

Review of the judgment of the Court of Appeals in an unpublished opinion filed June 1, 2018. Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed October 16, 2020. Judgment of the Court of Appeals affirming in part and reversing in part the district court is affirmed. Judgment of the district court is affirmed in part and reversed in part.

*Peter T. Maharry*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Jacob M. Gontesky*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

LUCKERT, C.J.: After Christopher Dale took the property of three individuals in one incident, the State charged Dale with two counts of aggravated robbery and one count of theft. Each count related to a different victim. Dale argues the State has divided one criminal offense into three crimes. He claims this violates the guarantee that no person will "be subject for the same offence to be twice put in jeopardy of life or limb" found in the Fifth Amendment to the United States Constitution and a Kansas statute, K.S.A. 21-3107(2)(a) (now codified at K.S.A. 2019 Supp. 21-5109).

Only the validity of the two aggravated robbery convictions has been preserved for our consideration. As to those convictions, we reject Dale's arguments and affirm both aggravated robbery convictions.

FACTUAL AND PROCEDURAL BACKGROUND

Dale's convictions arose from events that took place at a skate park where Dale threatened two teenagers with a BB gun while his companion grabbed their property.

2

Dale's involvement followed an earlier incident between the teenagers and his companion.

The encounter began when Dale's companion, a minor, approached three teenagers who had been skateboarding. Dale's companion tried to sell the skateboarders an iPod. Two of the skateboarders—who we will refer to as Adam and Kyle—responded by making fun of Dale's companion. Dale's companion became angry and walked away. He phoned his cousin to ask for a ride. Dale, who was the boyfriend of the cousin, answered the phone and, upon learning what happened, grabbed a BB gun and had his girlfriend drive him to a parking lot near the skate park.

Dale walked from there to the park and met his companion. Dale and his companion approached the skateboarders. The two skateboarders who had teased Dale's companion were sitting beside a pile of belongings that included Adam's iPod and cell phone and the cell phones of Kyle and the third skateboarder. The third skateboarder was skateboarding about 20 to 30 feet away while wearing headphones.

Dale first pushed Adam's head between his legs and pressed the gun behind his ear. When Kyle tried to intervene, Dale came toward him with the gun and put it to his chest. Kyle looked over and saw Dale's companion grab their property. Dale then hit Kyle in the nose with the gun.

Dale and his companion began to run away, but Adam stepped toward Dale and his companion and asked for the property. Dale displayed the gun again, which Adam took as a "warning . . . to back off."

3

Based on these events, the State charged Dale with the aggravated robbery of Adam's cell phone and iPod, the aggravated robbery of Kyle's cell phone, and the theft of the third skateboarder's cell phone. The State charged Dale's companion in juvenile court, after which the companion entered into a plea agreement under which he testified against Dale. A jury convicted Dale on all three counts, and the court sentenced Dale on each count.

Dale appealed to the Court of Appeals, where he argued two jury instruction errors, prosecutorial misconduct, a violation of his right to be present, and ineffective assistance of counsel. The Court of Appeals rejected all of Dale's claims except one about a jury instruction on aggravated robbery. Because of that error, the Court of Appeals reversed Dale's aggravated robbery convictions and remanded for a new trial on the two aggravated robbery counts. *State v. Dale*, No. 110,562, 2015 WL 2414264, at *1, 5-6, 14 (Kan. App. 2015) (unpublished opinion) (*Dale I*), *rev. granted in part, remanded to the Court of Appeals for reconsideration in light of State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 (2012) (regarding definition and application of clearly erroneous standard for jury instruction error); *State v. Dale*, No. 110,562, 2016 WL 687600, at *1 (Kan. App. 2016) (unpublished opinion) (*Dale II*) (explaining the *Dale I* panel had applied the proper standard when determining the jury instruction was clearly erroneous and otherwise adopting reasoning of *Dale I*).

On remand, Dale filed a pretrial motion to bar prosecution on the aggravated robbery counts. He argued the Court of Appeals' decision "finalized" his theft conviction. He also contended his theft conviction arose out of the conduct that supported the aggravated robbery charges and the aggravated robbery charges were therefore barred by K.S.A. 21-3107. Alternatively, raising an issue he had not raised in his appeal, he argued

4

the aggravated robbery counts were multiplicitous—that is, that the State charged him with multiple counts for one offense.

The State responded by arguing Dale's aggravated robbery convictions were not multiplicitous because Dale and his companion took property from each victim. And the State argued the theft of the third skateboarder's property was not a lesser included offense of the aggravated robbery of either Adam or Kyle.

The district court denied Dale's motion. As for the multiplicity issue about the aggravated robberies, the district court reasoned: "If there are two individuals that are right in front of the defendant at the time there is force being applied and their property is taken, I think the jury could find that those are aggravated robberies." Turning to the theft charge, the district court reasoned the third individual's property was not taken from his immediate presence, so "[t]hat's a theft." The court rejected the argument that misdemeanor theft encompassed all the acts of the two aggravated robberies and therefore constituted a double jeopardy violation.

Dale later waived his right to a jury trial and the parties prepared a "Statement of Stipulated Evidence for Trial." The stipulated evidence included testimony and exhibits from the preliminary hearing and the jury trial held before Dale's first appeal. Through the statement of stipulated evidence, Dale continued to assert his previous objections and motions, including his motion to bar prosecution of the aggravated robbery counts.

The district court found Dale guilty on both aggravated robbery counts. Defense counsel moved for reconsideration of Dale's motions and objections made before trial, but the district court rejected all of Dale's arguments and later imposed sentences on each count.

5

Dale again appealed to the Court of Appeals. The Court of Appeals panel held Dale's two aggravated robbery convictions were not multiplicitous. But the panel held that Dale's convictions for theft and aggravated robbery were improperly multiplicitous. The panel thus reversed Dale's theft conviction citing authority establishing that an appellate court reverses the less-severe offense when faced with multiplicitous convictions. The panel rejected Dale's double jeopardy argument that his theft conviction, affirmed on appeal before the remand, barred retrial for his two aggravated robbery counts. The panel reasoned that had Dale raised his multiplicity argument in his initial direct appeal, he would have only been entitled to have his theft conviction reversed, so Dale did not get a reward for failing to raise this issue prior to the remand. *State v. Dale*, No. 117,162, 2018 WL 2460263, at \*3-4 (Kan. App. 2018) (unpublished opinion) (*Dale III*).

Dale timely petitioned for review. The State did not cross-petition for review of any of the Court of Appeals' holdings. This court granted review and has jurisdiction under K.S.A. 20-3018(b) (petition for review of Court of Appeals decision).

ANALYSIS

In *State v. Schoonover*, 281 Kan. 453, 463, 133 P.3d 48 (2006), we explained that the Double Jeopardy Clause of the Fifth Amendment "protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." Arguments related to any of the three categories present questions of law over which we have unlimited review without deferring to either the district court or the Court of Appeals. 281 Kan. at 462.

6

Dale argues his convictions fall within the second and third categories. Both categories apply only if the involved crimes arise from the "same offense." Determining whether the State has charged a defendant with multiple counts of the same offense requires a multilayered analysis. 281 Kan. at 464.

1. *Unitary Conduct*

At the first layer, a court examines the facts to determine whether the charges arise from "discrete and separate acts or courses of conduct" or unitary conduct arising from "'the same act or transaction'" or a "'single course of conduct.'" Double jeopardy concerns arise only if unitary conduct is at issue. 281 Kan. at 464.

The Court of Appeals held Dale engaged in unitary conduct. *Dale III*, 2018 WL 2460263, at *2. The State did not file a cross-petition challenging this holding. But under similar circumstances we recently considered the merits as a "necessary subissue requiring [the court's] attention in evaluating [the defendant's] claim rather than a preservation misstep by the State." *State v. Hirsh*, 310 Kan. 321, 338, 446 P.3d 472 (2019). Cf. *State v. Hood*, 297 Kan. 388, 392, 300 P.3d 1083 (2013) (noting State did not cross-petition unitary conduct holding but stating, "we would affirm that ruling"). Consistent with *Hirsh*, we will examine whether the Dale's conduct was unitary.

Courts generally consider four factors when determining whether convictions arise from the same or "unitary" conduct: 1. Did the acts occur at or near the same time? 2. Did the acts occur at the same location? 3. Is there a causal relationship between the acts or was there an intervening event? 4. Did a fresh impulse motivate some of the conduct? *Schoonover*, 281 Kan. at 497. The State concedes the acts occurred at or near

7

the same time and at the same location. But it argues an intervening event occurred that prompted a fresh impulse when Kyle confronted Dale after Dale had pointed the weapon at Adam. According to the State, "[s]imply stated, Dale applied force individually to each of these young men to facilitate the theft of their individual property." The State cites no cases discussing the meaning of an intervening event or fresh impulse. Two cases not cited by the parties provide guidance, although they deal with different crimes.

In *State v. Sellers*, 292 Kan. 346, 253 P.3d 20 (2011), this court rejected a multiplicity challenge to two convictions for aggravated indecent liberties with a child. There, the defendant touched the victim, left the room to check on a dog for 30 to 90 seconds, and returned to the room to touch the victim a second time. This court acknowledged that the case presented a close call but held the conduct was not unitary because leaving the room to check on the dog broke the chain of causality and gave the defendant a chance to reconsider his felonious actions. 292 Kan. at 359-60.

In *State v. Weber*, 297 Kan. 805, 304 P.3d 1262 (2013), the defendant argued his convictions for rape and attempted rape were multiplicitous because they stemmed from the same conduct. The defendant attempted penile penetration and, when that failed, digital penetration. The State argued the defendant's inability to accomplish penile penetration constituted an intervening event that created a fresh impulse for the defendant to accomplish digital penetration. This court rejected that argument, explaining: "An intervening event, by its very nature, contemplates an interruption of causation, that is, incidents are considered factually separate when there is 'an intervening event, *as opposed to a causal relationship between the acts.*'" 297 Kan. at 810. But in *Weber* the impulse to rape the victim was never interrupted. See *State v. Foster*, 290 Kan. 696, 714, 233 P.3d 265 (2010) ("[W]hile other criminal acts occurred between Foster's multiple threats, it is difficult to see how they break the causal relationship between all of Foster's

threats or demonstrate fresh impulses to commit multiple crimes of criminal threat.").

Likewise, Kyle's actions did not deter Dale from his original intent to deprive the victims of their property. As the Court of Appeals reasoned: "[W]e see Dale as having embarked on a singular act of taking the boys' electronics with the help of a gun (and an accomplice). No outside event interrupted Dale, and everything occurred quickly." *Dale III*, 2018 WL 2460263, at *2. Simply put, there was no fresh impulse, and the State's charges against Dale arise from unitary conduct.

Because Dale's conduct was unitary, a double jeopardy violation is factually possible, and our analysis must continue. At the next layer of analysis, the analysis differs depending on whether the issues stem from crimes charged under one statute or more than one. *Schoonover*, 281 Kan. at 497-98. Dale's successive prosecution claim involves two statutes—theft and aggravated robbery—because his argument is that theft is a lesser included offense of aggravated robbery and he cannot be convicted of both. His multiple punishment argument arises from the same statute because he argues he cannot be punished twice for the same of offense of aggravated robbery. We turn first to his successive prosecution claim based on the charge of theft, which was affirmed on the first appeal and not a part of his second trial, and the charges of aggravated robbery.

2. *Retrial and Conviction for Aggravated Robbery Not Barred*

Dale's argument that the State violated double jeopardy protections by prosecuting him a second time for aggravated robbery after his theft conviction had been affirmed rests on application of K.S.A. 21-3107(2)(a). That statute provides that "[u]pon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both." He argues that when the Court of Appeals remanded

9

his case to the district court for a retrial on the aggravated robbery charges, he stood convicted of theft, a lesser included offense of the aggravated robbery charges, and could not be convicted later of aggravated robbery for the same offense.

The Court of Appeals panel agreed with Dale's argument that the theft is a lesser included offense of aggravated robbery. *Dale III*, 2018 WL 2460263, at *3 (citing, e.g., *State v. Plummer*, 295 Kan. 156, 164, 283 P.3d 202 [2012]). The panel then applied that conclusion to Dale's case, although it did not discuss the State's argument that a charge of theft related to the third skateboarder's property could not be a lesser offense of the aggravated robbery of Adam and Kyle because the three crimes involved different victims. Rather, the panel held: "Because Dale's actions were unitary and theft is a lesser included offense of robbery, the convictions for theft and aggravated robbery were improperly multiplicitous. . . . When an appellate court finds multiplicitous convictions, we reverse the less-severe offense. . . . We will therefore reverse Dale's theft conviction." 2018 WL 2460263, at *3.

The State did not file a cross-petition to argue that the panel should have considered the circumstance that the theft involved a different victim than the aggravated robberies. Today, such a failure would clearly mean the State had failed to preserve the argument for our review. See Supreme Court Rule 8.03(c)(3) (2020 Kan. S. Ct. R. 55) ("The purpose of a cross-petition is to seek review of specific holdings the Court of Appeals decided adversely to the cross-petitioner."). But, as we recently recognized, the State's need to file a cross-petition in order to preserve the requirement was less clear when Dale petitioned for review. See *Balbirnie v. State,* 311 Kan. 893, 899, 468 P.3d 334 (2020). In *Balbirnie*, we addressed an argument that arguably could have faced the prudential principle of waiver. 311 Kan. at 899.

10

Here, we have a different situation, however. The State not only failed to file a cross-petition, it filed a supplemental brief before this court, but did not argue the theft of the third skateboarder's property was not a lesser included offense of the aggravated robbery of Adam's and Kyle's property. Because of this failure, a second well-settled prudential rule of preservation kicks in: A party generally abandons or waives an issue by not briefing or arguing it to the court. *State v. Reu-El*, 306 Kan. 460, 471, 394 P.3d 884 (2017). We thus conclude the State has waived the argument that Dale's theft conviction was not a lesser included offense of his aggravated robbery convictions.

The State's waiver of the argument constrains our consideration of the issue because we do not know what arguments the parties would have made. Given that the State waived the point, we do not address the question of whether Dale's theft conviction is a lesser included offense of his two aggravated robbery convictions.

Assuming we are dealing with a theft as a lesser included offense of the two counts of robbery, we, like the Court of Appeals panel, consider the remedy that applies under K.S.A. 21-3107(2)(a) when a defendant has been convicted of both a crime and its lesser included offense. And we agree with the panel that typically Kansas appellate courts reverse the conviction for the lesser included offense and vacate the corresponding sentence. *Dale III*, 2018 WL 2460263, at *3-4. See, e.g., *Weber*, 297 Kan. at 811-12 (holding defendant's convictions for rape and attempted rape were improperly multiplicitous, consequently reversing conviction for lesser included offense of attempted rape and vacating corresponding sentence). The panel imposed this remedy. 2018 WL 2460263, at *4.

Dale argues the Court of Appeals erred in doing so because of the procedural posture of his case. He notes that when the Court of Appeals remanded his case to the

11

district court for a retrial on the aggravated robbery charges, he stood convicted of theft, a lesser included offense of the aggravated robbery charges. Given that posture, he contends his retrial on the aggravated robbery charges amounted to a second prosecution for the same offense in violation of his double jeopardy rights and the mandates of K.S.A. 21-3107(2).

We disagree. The State started the prosecution of the aggravated robbery and the theft charges at the same time. That single prosecution continues today. K.S.A. 21-3107(2) begins with the words "[u]pon prosecution." The Legislature chose not to use the words "upon conviction" or "upon sentence." The plain language thus directs us to the entire prosecution. And courts apply the plain language of statutes and avoid adding, deleting, or substituting words. See *Kelly v. Legislative Coordinating Council*, 311 Kan. 339, 347, 460 P.3d 832 (2020).

Likewise, the constitutional protection from a second prosecution does not prevent the continued prosecution of some counts in a prosecution after a criminal defendant has been convicted on other counts. *Ohio v. Johnson*, 467 U.S. 493, 104 S. Ct. 2536, 81 L. Ed. 2d 425 (1984), is instructive.

There, a defendant pleaded guilty on two counts of a multicount indictment. These two counts were lesser-included offenses of crimes charged in other counts the State continued to prosecute. The defendant then argued double jeopardy barred the continued prosecution on the remaining counts. The United States Supreme Court held: "Notwithstanding the trial court's acceptance of respondent's guilty pleas, respondent should not be entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution on the remaining charges." 467 U.S. at 502. Similarly, "in Kansas, '[a]n accused waives his right to plead double jeopardy when after conviction

12

he applies for and is granted a new trial.'" *State v. Morton*, 283 Kan. 464, 468, 153 P.3d 532 (2007).

There are exceptions for when a prosecution cannot continue after a defendant has sought a new trial. See generally 1 Wharton's Criminal Law § 64, Former Jeopardy— Relief at defendant's instance (15th ed.) (discussing exceptions to second trial at defendant's instance, involving [1] mistrial based on misconduct or bad faith of trial judge or prosecutor, [2] appellate reversal for insufficient evidence, and [3] former prosecution on a multi-count indictment resulting in conviction on some counts and silence about others); see also K.S.A. 21-3108(4)(c) ("A prosecution is not barred under this section . . . . [i]f subsequent proceedings resulted in the invalidation, setting aside, reversal or vacating of the conviction, unless the defendant was adjudged not guilty."). But none of those exceptions apply here, and Dale cannot assert a double jeopardy protection after his convictions were reversed at his insistence.

To do otherwise would reward Dale for failing to make a timely objection to the charges made against him. Had he asserted multiplicity before his first trial or during his first appeal, the potential consequence of a remedy on appeal would have been fully explored before retrial. In part because of procedural complications like we see here, "Kansas has a clear policy against piecemeal appeals." *State v. Hall*, 298 Kan. 978, 986, 319 P.3d 506 (2014). As the State asserts, granting Dale's request to reverse his aggravated robbery convictions encourages delaying a double jeopardy and multiplicity objection. This court has long disfavored such behavior.

In short, "[t]here simply has been none of the governmental overreaching that double jeopardy is supposed to prevent." *Johnson*, 467 U.S. at 502. We affirm the Court of Appeals holding reversing Dale's theft conviction and vacating his sentence for theft.

13

### 3. *Dale's Aggravated Robbery Convictions Are Not Multiplicitous*

Dale alternatively argues his two aggravated robbery convictions are multiplicitous. Because we have determined that unitary conduct led to both aggravated robbery counts, we turn to the next consideration of whether both counts charge Dale with the same offense. When the charges arise from the same statute, as they do here, courts determine whether "[b]y statutory definition are there two offenses or only one" by use of the unit of prosecution test. *Schoonover,* 281 Kan. 453, Syl. ¶ 15. Under that test, "the statutory definition of the crime determines what the legislature intended as the allowable unit of prosecution. There can be only one conviction for each allowable unit of prosecution." *Schoonover*, 281 Kan. at 497-98. "The determination of the appropriate unit of prosecution is not necessarily dependent upon whether there is a single physical action or a single victim. Rather, the key is the nature of the conduct proscribed." 281 Kan. at 471-72.

This means we must determine the allowable unit of prosecution for aggravated robbery. Under the statutes in effect when Dale committed the acts, aggravated robbery was a robbery, as defined in K.S.A. 21-3427, "committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery." And robbery was defined as "the taking of property from the person or presence of another by force or by threat of bodily harm to any person." K.S.A. 21-3426.

In *State v. Pham*, 281 Kan. 1227, 136 P.3d 919 (2006), this court applied the unit of prosecution test to the version of the robbery and aggravated robbery statutes at issue. There, Ngan Pham and two other men forcibly entered a residence and tied up six family members in the living room, including the family's two daughters and mother. While one man held the family at gunpoint, another took two pieces of jewelry, one belonging to

14

each of two daughters, from a purse in the mother's bedroom drawer. The State charged Pham with six counts of aggravated robbery. The State conceded that all six convictions could not survive, but it alleged two should be affirmed because two family members lost jewelry.

The *Pham* court phrased the precise issue before it as whether "the legislature intended for all six family members to be claimed as victims for the robbery of jewelry (a) belonging to only two and (b) taken from the bedroom of a third who was holding the jewelry for safekeeping." 281 Kan. at 1248. As this indicates, *Pham* was complicated by the fact it was hard to determine from whose presence the robbers took the jewelry because the robbers restrained and held at gunpoint both the owners of the property and the person with possession and control. See K.S.A. 21-3426 (defining robbery as "the taking of property from the person or presence of another by force or by threat of bodily harm to any person"). *Pham* held the legislative intent in this situation was unclear. 281 Kan. at 1248. So "[i]n the absence of clear legislative intent, the rule of lenity presumes a single physical action harming multiple victims is only one offense." 281 Kan. at 1248.

*Pham* reasoned its approach aligned with four earlier Kansas cases interpreting the robbery statutes, which *Pham* synthesized to explain:

> "[U]nder proper circumstances, one transaction can support more than one count of aggravated robbery. See, *e.g., State v. Jackson,* 218 Kan. 491, 543 P.2d 901 [1975]. Here, however, as in *State v. McQueen*, 224 Kan. 420, 582 P.2d 251 [1978], only one person was relieved of items of property belonging to different persons. Hence, there was only one victim." 281 Kan. at 1251.

Because this conclusion turns on distinctions in the synthesized cases, more discussion of them helps explain our analysis.

15

In *Jackson*, three men entered a pharmacy and at least two were armed with handguns. The men ordered the pharmacy occupants to the floor and robbed three people: (1) the pharmacist of money, drugs, and deposit slips belonging to the pharmacy; (2) a customer of money; and (3) an employee of money and a pocketknife. On appeal, this court rejected Jackson's argument that he could only be convicted of one count of aggravated robbery:  "While the incident here was one overall transaction, three separate robberies were committed with property of three different persons being taken by threat of bodily harm against three separate individuals." 218 Kan. at 492.

*Pham* also discussed *State v. Branch & Bussey*, 223 Kan. 381, 382, 384, 573 P.2d 1041 (1978), where this court rejected the argument that defendants' actions of seizing marijuana and robbing three men of their billfolds constituted one robbery. This court reasoned:  "Since each robbery was committed upon a different person it was necessary to prove different facts for each of the charges; thus, the charges were separate and not duplicitous." 223 Kan. at 384. This focus on the facts used to prove an offense has since been rejected as not consistent with the unit of prosecution test. See *Schoonover*, 281 Kan. at 467 (The same offense "'test has nothing to do with the evidence presented at trial. It is concerned solely with the statutory elements of the offenses charged.'"). But the *Branch & Bussey* court relied on a century-old Colorado Supreme Court case that used the correct test, *In re Allison*, 13 Colo. 525, 532, 22 P. 820 (1889).

There, the Colorado court rejected the defendant's argument that three of his indictments for highway robbery were for the same offense. The court held each count could stand because the defendant was not tried for robbing a stage; instead, each charge alleged the defendant robbed a different passenger on the stage. The court reasoned that each robbery constituted a distinct offense, even though occurring in the same place in

16

rapid succession. The court also considered the result if the acts were considered unitary conduct: "[E]ven if regarded as a single act, they affected separate objects. And, 'where one unlawful act operates on several objects, there may be several offenses committed, and so several prosecutions for the same criminal transaction.'" 13 Colo. at 532. *Pham* characterized *Branch & Bussey*'s discussion of *Allison* as "address[ing] what effectively was the unit of prosecution analysis." 281 Kan. at 1249.

Next, the *Pham* court discussed *State v. McQueen*, 224 Kan. 420, 582 P.2d 251 (1978). *Pham* described *McQueen* as a case "slightly off the path prepared by . . . *Jackson* and *Branch & Bussey*." 281 Kan. at 1250.

The State charged Donald McQueen in one count with robbery because the robbers took money in the presence of five employees of the Grove IGA, including Larry Wolf. In another count, the State charged McQueen with robbery for taking a revolver belonging to Wolf. *McQueen* held the latter conviction and sentence could not stand:

> "The state attempts to justify the separate charges by contending there was a lapse of time between the two incidents. When the robbery was in progress Wolf was confronted in the office by one of the robbers who demanded and received the gun. Wolf was ordered to leave the office and then the money was taken. The state further contends count eleven charges aggravated robbery of the money belonging to Grove IGA, while count twelve separately charges aggravated robbery of a gun belonging to Wolf. These arguments are not persuasive. There was one store robbery. Both the money and the gun were kept on the store premises in connection with running the business. This court has held ownership of the property taken is not an element of robbery under K.S.A. 21-3426. [Citation omitted.] *Multiple offenses cannot be carved out of a single robbery because of separate ownership of the property taken.*

17

"The state may not split a single offense into separate parts. When there is one wrongful act it does not furnish a basis for more than one criminal prosecution." (Emphasis added.) 224 Kan. at 430-31.

While this result may at first glance seem inconsistent with *Jackson* and *Branch & Bussey*, in *State v. Shoemake*, 228 Kan. 572, 618 P.2d 1201 (1980), this court explained how *McQueen* followed the path prepared by *Jackson* and *Branch & Bussey*. In *Shoemake*, the allegations involved the defendant's accomplice robbing a supermarket. The accomplice approached the manager with a weapon and demanded money; the manager handed over money from a register. Then, at a different register, the accomplice took money by force from a cashier and a third employee placed the money in a sack. On appeal, Joe Shoemake argued only one robbery took place and separate charges of robbery of the manager, the cashier, and the third employee allowed multiple convictions for a single offense. This court agreed that the charge relating to the third employee could not stand because the robbers took no property forcibly from him. 228 Kan. at 577. But this court affirmed the other counts:

"Where, in the course of the robbery of a business establishment, several employees are held at gunpoint and compelled by force to deliver to the robber property in the possession or custody of the employee, a separate and distinct aggravated robbery occurs with the taking of property from each victim. In the present case, property was taken from the manager . . . and from the cashier . . . both of whom were custodians of store property. The forcible taking of such property from these employees constituted separate and distinct aggravated robberies which could be charged in separate counts." 228 Kan. at 577.

18

*Shoemake* also explained this court's earlier decision in *McQueen*:

"In . . . *McQueen*, . . . it was held that multiple offenses could not be charged where only one person was robbed of items of property belonging to different persons. In that case, one conviction for aggravated robbery was set aside where *the only victim* was compelled at gunpoint to deliver property belonging to a supermarket and also a gun belonging to himself." (Emphasis added.) *Shoemake*, 228 Kan. at 577.

As quoted above, after discussing these earlier cases, the *Pham* court noted: "[A] synthesis of these four cases demonstrates that under proper circumstances, one transaction can support more than one count of aggravated robbery." *Pham*, 281 Kan. at 1251. But, where only one person is "relieved of items of property belonging to different persons," only one count may stand. 281 Kan. at 1251. In *Pham*, arguably only the mother had possession—that is, she is the one from whose presence the robbers took the property of her two daughters. Likewise, in *McQueen*, the robbers took money belonging to the Grove IGA and a gun belonging to Wolf from the possession or control of Wolf. In those cases, one robbery occurred.

The *Pham* court reached this conclusion based in part on the discussion of the meaning of "presence" in *State v. Evans*, 251 Kan. 132, 834 P.2d 335 (1992). See *Pham*, 281 Kan. at 1248. *Evans*, like *Pham*, dealt with a robbery of property located in a bedroom while the person who possessed the property was in the living room. In both cases, this court held the taking was from the presence of the person with possession or control of the property. The *Evans* court, 251 Kan. at 137, quoted from *State v. Glymph*, 222 Kan. 73, 74, 563 P.2d 422 (1977), which discussed in greater depth the meaning of "presence" as used in the context of robbery crimes.

19

In that discussion, the *Glymph* court made a point that supports one of Dale's argument:  He argues the Court of Appeals panel erred because it improperly focused on ownership of the property. *Glymph* supports the point-of-law aspect of this argument because it holds that ownership is not an element in defining the unit of prosecution for robbery. 222 Kan. at 74. Yet it is not clear to us that the panel focused on ownership. While the panel mentioned ownership, it also discussed taking property by force from the presence of an individual. See *Dale III*, 2018 WL 2460263, at * 3 ("Dale used a gun to take property owned by Adam and Kyle from the presence of each of them. Dale pushed Adam's head between his legs and put a gun behind his ear. Dale separately put his gun to Kyle's chest. The State could charge two counts of aggravated robbery on these facts."). This analysis dovetails with the remainder of the *Glymph* court's discussion about taking property from the presence of someone, and that discussion undercuts Dale's arguments.

The *Glymph* court explained that robbers take property from the presence of the victim if the "victim's possession and control of property is severed by force or threat of bodily harm" even if, "prior to the time the property is taken, the victim is forcibly removed from the premises and the taking is not within his immediate view." *Glymph*, 222 Kan. 73, Syl. ¶ 2. The court expanded on this element—severance by force—that is key to defining the unit of prosecution:  "The general rule is that 'presence,' as that word is used in defining robbery, means a possession or control so immediate that violence or intimidation is essential to sunder it." 222 Kan. at 74. Stating the point again, the court added:  "A thing is in the presence of a person with respect to robbery, which is so within his control that he could, if not overcome by violence or prevented by fear, retain his possession of it." 222 Kan. at 74-75.

In *Pham*, ambiguity existed as to whether the robbers severed possession of the property from the mother, the owner-daughters, or all. Because of that ambiguity, the

20

*Pham* court determined only one count of robbery stood. But in the strand of cases discussed by *Pham* where the court could determine multiple individuals had possession or control of property that was taken by force, the court held the defendants could be convicted of multiple counts of robbery. Robbers used force or the threat of bodily harm to separately take property from a pharmacist and two customers in *Jackson*, billfolds from three men in *Branch & Bussey*, property from different stage passengers in *Allison,* and property from the store manager and a cashier in *Shoemake*. The multiple instances of severance of possession and control by force or by threat of bodily harm supported multiple convictions. The Court of Appeals holding thus finds support in *Jackson*, *Branch & Bussey*, *Allison,* and *Shoemake*.

Dale disagrees, arguing the facts here more closely align with *Pham* and *McQueen*. Granted, at least some of those cases in which multiple convictions were affirmed involved more clearly delineated takings of property from each victim because the property was taken from the person, rather than from their presence. And because the property grabbed by Dale's companion was on the ground near Adam and Kyle rather than on them, Dale and his companion took the property from their presence. Even so, this case is more like *Jackson*, *Branch & Bussey*, and *Shoemake* than *Pham* and *McQueen*.

Here, as compared to *Pham*, nothing suggests that either Adam or Kyle had entrusted the other with possession of the property. Instead, both had comparable access to the property, and each had a claim to the control and possession of at least his own cell phone and, for Adam, his iPod. In this way, while ownership is not determinative, it can weigh on the question of who possessed and controlled the property. And Adam and Kyle both had some "possession or control so immediate that violence or intimidation [was] essential to sunder" or sever it. *Glymph*, 222 Kan. at 74.

21

We agree with the panel and the district court that the State could charge Dale with two counts of aggravated robbery under the unit of prosecution test.

CONCLUSION

The Court of Appeals determined that theft was a lesser included offense of aggravated robbery; that holding has not been preserved for our review. We have been asked if, given that holding, Dale could be convicted of the greater offense while the lesser offense is reversed. On that question, we hold the Court of Appeals did not err in holding that convictions for aggravated robbery would not result in a subsequent prosecution in violation of either a constitutional or statutory right to be free from double jeopardy. We also determine that neither the Court of Appeals nor the district court erred in holding that Dale was not twice put in jeopardy when convicted of two counts of aggravated robbery given the facts establishing that Dale and his companion severed both Adam's and Kyle's possession and control of the property through bodily harm or the threat of bodily harm resulting from the use of a deadly weapon.

Judgment of the Court of Appeals affirming in part and reversing in part the district court is affirmed. Judgment of the district court is affirmed in part and reversed in part.

JEFFREY GETTLER, District Judge, assigned.[1]

_____

[1]**REPORTER'S NOTE:**  District Judge Gettler was appointed to hear case No. 117,162 under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.