NOT DESIGNATED FOR PUBLICATION

No. 127,262

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

TORREY SHERARD LINDSAY,
*Appellant.*

MEMORANDUM OPINION

Appeal from Riley District Court; KENDRA LEWISON, judge. Submitted without oral argument. Opinion filed September 26, 2025. Affirmed in part, vacated in part, and remanded with directions.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ARNOLD-BURGER and BRUNS, JJ.

PER CURIAM: Torrey Lindsay appeals his convictions in two separate criminal cases after a consolidated jury trial on charges arising from two different altercations with his former girlfriend. He brings three arguments on appeal. First, Lindsay argues that the evidence was insufficient to convict him of robbery, which was based on the State's claim that he forcefully took his girlfriend's cell phone. Second, Lindsay claims that his convictions should be reversed and remanded for a new trial based on the district court's failure to correctly instruct the jury on the burden of proof and the jury's role—essentially undermining the possibility of jury nullification. Finally, Lindsay claims the district court

1

erred in awarding jail credit solely to the sentence in his first case and declining to award any credit to the sentence in the second case.

Based on our review of the record on appeal, we affirm Lindsay's convictions. But Lindsay's jail-credit issue is controlled by *State v. Ervin*, 320 Kan. 287, 311-12, 566 P.3d 481 (2025), where the Kansas Supreme Court recently interpreted Kansas' jail-credit statute to require a defendant to receive one day of credit for each day incarcerated pending disposition of their case, even if they already "received an allowance for some or all that time against a sentence in another case." We thus vacate the district court's decision not to award jail time credit in Lindsay's second case—Case No. 22CR63—and remand this case to the district court with directions to credit Lindsay's sentence for all the time he spent incarcerated pending disposition of that case.

FACTUAL AND PROCEDURAL BACKGROUND

Lindsay and the victim of these crimes, to whom we refer here under the pseudonym Jane, had been in an on-and-off relationship since 2008 and had six children.

On June 9, 2021, Jane texted Lindsay from the cell phone that Lindsay had given to her and told him that she wanted to end the relationship. The two continued to text, and Jane texted "[s]omething to the effect of now he wants to step up and be a part of [the children's] lives." Jane testified that Lindsay responded by telling her that "[you] can kill [yourself] with that." And Lindsay also followed up by texting Jane that she could borrow a gun if she needed one. While Lindsay admitted to making that statement, he claimed that he was being a "smartass," and the comment was made along those lines.

Later that day, Lindsay confronted Jane as she was showing a unit in a trailer park to two individuals as part of her employment. As Jane unlocked the door of the unit, Lindsay drove by and yelled at Jane that she had better "answer [the] damn phone" when

2

he calls. Jane texted her supervisor that it was not safe for her to be in the trailer park because Lindsay had arrived.

After finishing up at the unit, Jane headed back to the clubhouse. As she was driving, Lindsay pulled up behind her and tried to run her off the road by veering his car into her lane. Lindsay pushed Jane into the shoulder area of the road before she was able to turn off and head to her office.

After Jane parked and headed towards the office, Lindsay pulled into the parking lot and parked his car. Lindsay got out of his car and began "aggressively" walking towards her and yelling at her to go and unlock the door to her residence. When Jane told Lindsay he needed to leave because she was at work, he grabbed her in a "bear hug" from behind as she tried to run to the office door.

Lindsay then grabbed and held the same hand in which Jane was holding her keys and cell phone. Lindsay demanded Jane give him the phone and told her: "It's not yours." When she refused, he forcefully took the phone by grabbing it out of her hand. Jane testified that Lindsay was hurting her hand so much that she had to let go of the phone.

Lindsay testified that he took the phone from Jane because they were breaking up and he was paying for the phone through a company plan offered by his employer. According to Jane, Lindsay gave her the cell phone in December 2020, and she used the cell phone for both business and personal purposes. Jane testified that it was her understanding that it was her phone for personal use; she stored personal photographs and information on the phone. Jane stated that Lindsay had his own phone, and she communicated with him on that phone.

3

While Lindsay and Jane were arguing, Jane's supervisor came outside and told Lindsay to leave. Both Jane and Lindsay called the police. Later that evening, Lindsay returned the phone to Jane.

About a month later, Lindsay and Jane reconciled their relationship, but they maintained separate residences. On October 9, 2021, Lindsay failed to show up at Jane's house after making plans with her. Lindsay later texted Jane that he was on I-70 between Kansas City and Manhattan with a flat tire. Jane took her daughter's phone and used the "Find My Friends" app to track Lindsay's phone to Herington, which is west of the area where he claimed to be stuck on the road. Jane said she wondered why Lindsay was not being honest about his location.

Early the next morning, Jane woke up between 2 and 3 a.m. At that time, she checked the location app again, and Lindsay's phone was pinging in Junction City. Jane went back to bed. When she woke up between 6 and 7 a.m. on October 10, 2021, Lindsay's phone was showing that he was located at another woman's apartment in Junction City.

Jane drove from Manhattan to Junction City to see if Lindsay's vehicle was located at the woman's apartment. After she located Lindsay's vehicle at the apartment, she took a photo of his vehicle. Jane drove around while trying to decide what to do before she pulled into a parking lot. Lindsay then texted Jane and told her he had been in the emergency room until 4:30 a.m., and he then immediately called her. Jane talked to Lindsay for about five minutes, but she did not confront him or tell him that she was in Junction City. In order to avoid confrontation, she waited a few minutes before heading back to Manhattan.

As Jane was driving home on K-18 Highway, Lindsay began calling and texting her, but she did not answer. Jane then noticed a car approaching her from behind at an

4

extremely fast pace—she then realized that the car was Lindsay's. Lindsay veered into the left-hand lane and shouted or yelled at Jane, directing her to pull over. When Jane refused to pull over, Lindsay veered into her lane in an attempt to push her off the road. She slammed on her brakes and then accelerated multiple times in an attempt to lose him, but Lindsay stayed with her.

Jane watched Lindsay reach into the middle console of his vehicle. Jane sped up, and when Lindsay caught up with her, she could see that he was pointing a gun at her. Jane sped off again, and she heard a "pop" as something hit her car. Lindsay again attempted to run Jane off the road.

Lindsay then approached Jane on the passenger side of her vehicle, pointed the gun at her, and shot into her car, shattering her window. Jane testified that she felt something strike her eye, and she thought she had been shot. Jane pulled over, called 911, and told the dispatcher that she had been shot. After Jane was taken to the hospital, the physician determined that Jane had not been shot, but glass from the broken window was lodged above her right eye.

The State charged Lindsay in two separate criminal cases:

- In Case No. 21CR404, the State brought charges of attempted first-degree murder, aggravated assault, criminal discharge of a firearm at an occupied vehicle, aggravated battery, and intimidation of a witness. These charges resulted primarily from the events occurring on October 10, 2021, but the intimidation of a witness charge related to an incident occurring in April 2022.

- In Case No. 22CR63, the State brought charges of robbery (for taking Jane's phone at the incident in the trailer park), aggravated assault, and domestic battery.

The cases were consolidated for trial. At trial, Lindsay testified in his own defense that on October 10, 2021, Jane pulled up next to him on the highway and made a "gun motion." Lindsay then pulled over and called the police to report that he thought Jane had shot at him.

The jury found Lindsay guilty of all charges except for the aggravated assault charge in case No. 22CR63. On December 6, 2023, the district court sentenced Lindsay to a controlling term of 276 months in prison—consisting of a 245-month sentence in Case No. 21CR404 and a consecutive 31-month sentence in Case No. 22CR63.

Lindsay was incarcerated from the time of his arrest on October 10, 2021, until he was sentenced on December 6, 2023, for a total of 788 days in Case No. 21CR404. Lindsay was not charged in Case No. 22CR63 until February 15, 2022, so he spent around 660 days in jail awaiting the disposition of that case. Because the sentences were ordered to run consecutive, the district court awarded 788 days of jail credit in Case No. 21CR404 and awarded no credit in Case No. 22CR63. Lindsay filed a timely notice of appeal in both cases, and the cases were consolidated for our consideration.

DISCUSSION

*Sufficiency of the evidence for robbery*

Lindsay first challenges the sufficiency of the evidence to sustain his conviction for robbery. Specifically, he claims that the State failed to prove that he committed robbery because the cell phone belonged to him, and he could not be convicted for retrieving his own property from Jane.

When a defendant in a criminal case challenges his or her conviction for a criminal offense, we must review the record for evidence to show that the State proved each

6

element of the offense. *State v. Chandler*, 307 Kan. 657, 669, 414 P.3d 713 (2018). In doing so, we "review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt." *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024). It is not our role on appellate review to reweigh evidence, resolve evidentiary conflicts, or pass on the credibility of witnesses. 319 Kan. at 723.

Here, the State charged Lindsay with robbery for taking the cell phone from Jane's person. Specifically, the State alleged that Lindsay "did unlawfully, feloniously and knowingly take property, to wit: a phone, from the person or presence of [Jane], by force, or by threat of bodily harm to any person" in violation of K.S.A. 21-5420(a). Robbery is a person crime which our legislature has defined as "knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person." K.S.A. 21-5420(a). Consistent with the charge and the statute, the district court's jury instruction No. 6 set out the following elements the State was required to prove: (1) Lindsay "knowingly took property" from Jane's person; (2) the taking was by force; and (3) the act occurred in Riley County.

Lindsay claims that the State presented insufficient evidence of robbery because the property he took from Jane belonged to him as he was paying for the cell phone service through his employer. But the elements of robbery do not include a requirement of proof of ownership. K.S.A. 21-5420(a). In *State v. Glymph*, 222 Kan. 73, 74, 563 P.2d 422 (1977), our Supreme Court recognized that the victim's ownership of the property taken is not an essential element of the offense.

Lindsay acknowledges that Kansas has long held that ownership of the property is not an element of robbery. See *State v. Dale*, 312 Kan. 174, 189, 474 P.3d 291 (2020); *Glymph*, 222 Kan. at 74. But he points to language in *State v. Pierce et al.*, 208 Kan. 19, 26, 490 P.2d 584 (1971), which he claims indicates that the taker of property must have

7

no claim of ownership of the property. In *Pierce*, the court stated that "the violent taking of property from the person of another by force or intimidation for the purpose of applying it to payment of an alleged debt constitutes the offense of robbery where the taker has no bona fide claim of title or right to the possession of the particular property." 208 Kan. at 26.

In that case, Pierce and his codefendants believed their employer owed them unpaid wages and consultation fees. Pierce and his codefendants threatened several individuals regarding the debts; out of fear, the victims wrote out checks for the amounts allegedly owed. On appeal, Pierce and his codefendants claimed that the evidence was insufficient to convict them of robbery as they had a bona fide claim to the monies owed. But the Kansas Supreme Court affirmed their convictions, finding that they had no claim to the specific property taken, i.e. the money, noting that the "purported claim was to an inchoate undetermined amount of money allegedly owed." 208 Kan. at 26. And the court found that "taking money from a debtor by force to pay a debt is robbery." 208 Kan. at 28. The language Lindsay points to in *Pierce* is dicta and related to the specific facts of the case, and we find it does not add an element to the crime of robbery as set forth in K.S.A. 21-5420(a).

Lindsay also cites *State v. Goldsberry*, 160 Kan. 138, 160 P.2d 690 (1945), which involved a conviction for grand larceny for the taking of cattle that the defendant believed belonged to him. Goldsberry's defense was that he did not take the cattle to permanently deprive the owner of possession of the cattle, but rather he took the cattle temporarily to determine whether he was the true owner. 160 Kan. at 145. Because grand larceny requires proof of felonious intent to permanently deprive the owner of the property, our Supreme Court found insufficient evidence to support a conviction for grand larceny. 160 Kan. at 149-50. We find this case easily distinguishable. Unlike in *Goldsberry*, the crime of robbery does not include an element of proof of the felonious intent to permanently deprive the owner of the property. See K.S.A. 21-5420(a).

We reject Lindsay's argument that he could not be found guilty of robbery based on his claim that the cell phone belonged to him. As noted by our Supreme Court, proving ownership of the property is not an element of the crime of robbery. *Dale*, 312 Kan. at 189; see K.S.A. 21-5420(a). Further, we find that the dicta in *Pierce* regarding a requirement that the taker not have a "bona fide claim of title or right to the possession of the particular property" does not add an ownership element to the plain language of the robbery statute. 208 Kan. at 26.

Even if the ownership of the property was at issue, the evidence showed that Lindsay gave the phone to Jane for her personal use, and there was no indication that Lindsay or Jane believed that she was only borrowing the phone. Jane testified that she used the phone for storing personal photographs, texting, emailing, and in the course of her employment. Even if the phone technically belonged to Lindsay or his employer, Jane had digital property stored on the phone that did not belong to Lindsay. This might be compared to a defendant taking a purse—with a true belief of ownership of the purse—but also taking the contents of that purse, over which they had no claim of ownership.

After examining the evidence in the record, we conclude that the State presented sufficient evidence that Lindsay knowingly took property—the cell phone and its digital contents—from the person of Jane by force. Thus, a rational fact-finder could have found Lindsay guilty of robbery beyond a reasonable doubt. Considering the evidence in a light most favorable to the State, we affirm Lindsay's conviction for robbery.

*Instructions relating to the burden of proof and the jury's role*

Lindsay next argues that two of the district court's jury instructions were erroneous and require reversal of his convictions. He claims that the jury instructions misinformed the jury of the burden of proof and its role in reaching a verdict. And thus the

instructions undermined the jury's power of nullification by using nonpermissive language that "pushed the jury to convict even if it had reservations that the severity of the charges was a mismatch with the facts underlying those charges."

Our Supreme Court has provided a three-step process in reviewing jury instruction issues. First, we determine whether the appellate court can or should review the issue, looking specifically at appellate jurisdiction and preservation of the issue. Next, we consider the merits of the claim to determine whether the district court erred in instructing the jury. In this second step, we determine whether the instruction was legally and factually appropriate, using a de novo review of the entire record. Finally, if the jury was improperly instructed, we assess whether the error requires reversal or may be deemed harmless. *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025).

Lindsay objected to both of the complained-of jury instructions prior to the instructions being given to the jury for deliberation. So, we find that Lindsay properly preserved the issues for appeal. In addition, we exercise unlimited review, as the issues raised are based solely on the legal appropriateness of the instructions. 320 Kan. at 242.

Lindsay claims that two of the district court's jury instructions undermined the jury's power of nullification. Jury nullification is the jury's "'knowing and deliberate rejection of the evidence or refusal to apply the law.'" *State v. Boothby*, 310 Kan. 619, 632, 448 P.3d 416 (2019). Although a jury has the incidental right to nullify, a defendant has no right to instruct the jury to exercise that power. *State v. Patterson*, 311 Kan. 59, 68, 455 P.3d 792 (2020).

As the State notes, both of Lindsay's arguments regarding jury instructions have previously been rejected by the Kansas Supreme Court. See *State v. Kornelson*, 311 Kan. 711, 721-22, 466 P.3d 892 (2020); *Boothby*, 310 Kan. at 631-32. Lindsay acknowledges that our Supreme Court has upheld such instructions as legally appropriate, but he claims

the Supreme Court wrongly decided the issue. We note that we are duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). And Lindsay provides no argument supporting a finding that the Supreme Court is changing its position.

First, Lindsay argues that the jury was improperly instructed as follows: "If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find [Lindsay] guilty." See PIK Crim. 4th 51.010 (2024 Supp.). Lindsay claims that the word "should" comes too close to directing a verdict for the State.

In *Kornelson*, our Supreme Court found no error in a similar instruction, finding that it accurately informed the jury about the law but did not undermine the jury's right of nullification. 311 Kan. at 722; see *Patterson*, 311 Kan. at 68-69. Because our Supreme Court has previously rejected a similar argument—and we see no indication that the court is departing from this position—we are duty bound to find this instruction was legally and factually appropriate. *Patton*, 315 Kan. at 16.

Second, Lindsay claims that the district court incorrectly directed the jury that its "verdict must be founded entirely upon the evidence admitted and the law given in these instructions." See PIK Crim. 4th 68.010 (2012). Lindsay argues that the jury instruction misinformed the jury that it had no right to nullify.

In *Boothby*, our Supreme Court held that instructing the jury that its verdict "must" be based on the admitted evidence and the law given in the instructions was legally correct. 310 Kan. at 631-32. In rejecting the defendant's claim that the jury instruction interfered with the right to jury nullification, the *Boothby* court stated that instructing the jury to follow the law is not error: "This is an accurate—and bedrock—statement of law

11

that mirrors the juror's oath; upholds the role of judge and jury; and most importantly, protects the accused." 310 Kan. at 631.

Lindsay asserts that *Boothby* was wrongly decided because such an instruction misinforms the jury that it has no right to nullify. But we can find no indication that the Kansas Supreme Court is departing from its previous approval of the word "must" in a similar jury instruction. See *Patton*, 315 Kan. at 16. Thus, we find the jury instruction was legally and factually appropriate.

Both of the objected-to jury instructions were factually and legally appropriate and did not interfere with the jury's power of nullification. Lindsay has not apprised us of any error in the court's instructions to the jury.

*Jail credit*

Finally, Lindsay argues that the district court erred when it did not award 660 days of jail credit in Case No. 22CR63 for the days he spent in custody pending trial and sentencing in that case. Lindsay argues that the district court's award of jail time credit was inconsistent with the jail-credit statute and the holding set forth in *State v. Hopkins*, 317 Kan. 652, 657, 537 P.3d 845 (2023), which mandated that the defendant shall be awarded jail time credit for all the time spent in custody pending the disposition of a criminal case. Lindsay claims that he should be awarded jail time credit toward his sentence in Case No. 22CR63 for the time he spent in custody—regardless of whether he has received credit for that time in another case.

On April 15, 2025, Lindsay filed a letter of additional authority pursuant to Supreme Court Rule 6.09 (2025 Kan. S. Ct. R. at 40), asserting that our Supreme Court's holding in *Ervin*—which was decided after briefing on this matter was complete— controls the issue. Generally, an appellate court decision that changes the law

12

prospectively applies to all cases that are pending on direct review on the date of the appellate court decision. See *State v. Mitchell*, 297 Kan. 118, Syl. ¶ 3, 298 P.3d 349 (2013).

Lindsay acknowledges that he did not raise this issue before the district court. Still, he requests that we consider it because this issue involves primarily a question of law on admitted facts and is necessary to serve the ends of justice or prevent the denial of fundamental rights. See *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021) (explaining exceptions to the general rule that an issue cannot be addressed for the first time on appeal). Statutory interpretation presents a question of law over which our review is unlimited. See *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024). Moreover, *Ervin* was decided while this appeal was pending. Under these circumstances, we find that it is appropriate to address this issue for the first time on appeal.

At the time Lindsay was sentenced, the right to jail time credit in Kansas was controlled by K.S.A. 2022 Supp. 21-6615(a), which provides:

> "In any criminal action in which the defendant is convicted, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing the defendant's sentence and parole eligibility and conditional release dates thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment. Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case."

In *Ervin*, the Kansas Supreme Court found that the language in this statute that directs a district court to award time *spent incarcerated pending the disposition of the defendant's case* requires an award of one day of credit for each day that a defendant is

13

incarcerated "regardless of whether [the defendant] received an allowance for some or all that time against a sentence in another case." 320 Kan. at 311-12.

Because Lindsay's appeal was pending when *Ervin* was decided, the holding in *Ervin* applies to this case. See *Mitchell*, 297 Kan. 118, Syl. ¶ 3. And we are duty bound to follow Kansas Supreme Court precedent. *Patton*, 315 Kan. at 16. We vacate the district court's jail-credit determination in Case No. 22CR63 and remand with directions to reassess that determination based on the Kansas Supreme Court's decision in *Ervin*.

Affirmed in part, vacated in part, and remanded with directions.